**KEY WEST HAND PRINT FABRICS, INC., a Florida corporation, Plaintiff,**

v.

**SERBIN, INC., an Ohio corporation, Defendant.**

**No. 64–272–Civ.**

United States District Court
S. D. Florida.
July 30, 1965.

M. A. Baskin and Guilmartin & Bartel, Miami, Fla., for plaintiff.

Eugene C. Heiman, of Myers, Heiman & Kaplan, Miami, Fla., for defendant.

DYER, Chief Judge.

This action was brought by Key West Hand Print Fabrics, Inc. v. Serbin, Inc. for copyright infringement of fabric designs known as "Bougainvillea" "Zuzek Rose Butter," and "Dragon,"[1] and for unfair competition.

Plaintiff manufactures fabrics by a hand printed silk screen process at its plant in Key West, Florida. The fabrics are displayed and sold in plaintiff's shops in Key West, Florida, and elsewhere, and sold to others who manufacture dresses. Plaintiff also manufactures and sells some dresses and apparel made from its hand printed fabrics.

Lilly Pulitzer, Inc., of Palm Beach, Florida, was plaintiff's largest customer. It purchased silk screen printed fabrics from the plaintiff and had them manu-

---

1. At the trial it was determined that, as to "Bougainvillea," the copyright was registered in the joint names of plaintiff and Charles Cervantes. The latter being an indispensable party but not joined as a plaintiff, Count One must be dismissed without prejudice.

factured into dresses by Gary's Originals, Miami, Florida.

In the early days of the popularity of the Lilly shift dress, Lewis I. Serbin, defendant's Board Chairman, sought out Miss Pulitzer, offered to handle the manufacture of her dresses, had his pattern maker work with her, and arranged to introduce her to his manufacturer, Gary.

Prior to this time, Gary's entire production facilities had been utilized by the defendant for the manufacture of its dresses. In fact, two of defendant's employees, its Vice President and Production Chief, owned a one-half interest in the plant.

At Miss Pulitzer's direction, plaintiff shipped the fabrics purchased by her direct to Gary. The dresses manufactured by Gary included those made up from the copyrighted fabric designs in issue in this case.

The demand for "Lilly's" mushroomed. In March 1963, Serbin and Muriel Ryan, defendant's Vice President and designer, visited plaintiff's plant in Key West and were shown through the retail shop where they examined the fabrics on display, including the copyrighted designs. Serbin indicated a desire to purchase the fabrics and the screens, but plaintiff declined because of its arrangement with Miss Pulitzer.

Thereafter, the infringing fabric designs were made for defendant by C. and J. Ryan Co., a manufacturing establishment operated by the brothers of the defendant's designer. Actually, the defendant had no artists who created fabric designs. It selected fabrics from others for the manufacture of its dresses.

Generally speaking, the plaintiff's designs were created by an artist drawing a pen and ink rendering of a part of a design, using different techniques for different designs, tracing or transferring the designs in different positions onto a transparent acetate, and placing them on the acetate in different ways by shifting the designs from place to place so as to form an interlocking and artistically pleasing complete design or repeat. This was then transferred by a photo-graphic and chemical process to silk screens held in large wooden frames and used to print the cloth. Each frame contained a complete repeat of the design and each repeat had a copyright notice. One silk screen design was combined with another so as to produce an artistic combination of the two designs.

The "Zuzek Rose Butter" rendering was accomplished by an artist drawing the "Zuzek Rose" portion freehand out of her head. Thereafter, a number of additional designs of a similar nature were drawn and photographed. The photographs were then artistically arranged and an acetate made of this portion of the design. Superimposed on the "Zuzek Rose" portion of the design were butterflies added in an artistic arrangement.

The "Dragon" design was rendered by a freehand drawing of a dragonfly and a dragon followed by marbleizing on the original design (accomplished by soaking the paper in water and then carefully drawing with India ink the design on the wet paper to give the effect of marble) and additional artistic work on the acetates.

When these composite designs were hand printed on the fabric, they were sufficiently original in creation and arrangement for copyright protection within the purview of Title 17, U.S.C.A. § 7. H. M. Kolbe Co., Inc. v. Armgus Textile Company, Inc., 2 Cir.1963, 315 F.2d 70, 99 A.L.R.2d 390; Dan Kasoff, Inc. v. Novelty Jewelry Co., Inc., et al., 2 Cir.1962, 309 F.2d 745; and Peter Pan Fabrics, Inc. v. Dixon Textile Corporation, 2 Cir.1960, 280 F.2d 800.

During the process of manufacturing, plaintiff placed the statutory notice of copyright on each repeat of the fabric design approximately every 30 inches on the selvage. Defendant takes the position that this was insufficient; that the notice could have been imbodied in the design without impairing its market value or its aesthetic appeal; and since the selvage was customarily removed when the goods were cut, there was lack of statutory notice. The experts (in-

cluding the defendant's), as well as the physical evidence, do not support this assertion.

While it is not unusual for a dress manufacturer to insert his name into a design, and some well known in the retail trade do it particularly for "snob appeal" ("Mr. Dino," "Pucci," "Vera," etc.), it is not feasible for the *printer* or *converter* of the cloth to do so. He sells his product by the bolt, or some equivalent, to the *manufacturer* and not the public. The manufacturer wants to promote his name, not that of the printer who is unknown to the public. It can hardly be seriously contended that "Dino" or "Pucci" (or any other manufacturer) would accept cloth with the name "Key West Hand Print Fabrics, Inc." and a copyright mark worked into the design if they intended to make it into dresses to be sold to the public.

■ The defendant had the burden of proving that the notice of copyright could have been incorporated in the body of the design instead of the selvage. Cortley Fabrics Company, Inc. v. Slifka et al., S.D.N.Y., 175 F.Supp. 66, affirmed per curiam, 2 Cir.1963, 317 F.2d 924. This it failed to do; and under such circumstances, the placing of the copyright notice on the selvage has been repeatedly approved. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 2 Cir.1960, 274 F.2d 487; Peter Pan Fabrics, Inc. v. Dixon Textile Corp., supra; Peter Pan Fabrics, Inc. v. Puritan Dress Co., Inc., S.D.N.Y.1962, 207 F.Supp. 563.

After the renderings of "Zuzek Rose Butter" and "Dragon" had been prepared in late 1962, Miss Pulitzer, while on a visit to Key West, was shown them so she could determine whether the original designs would work out well on the cloth before they were printed.

In November 1962, "Zuzek Rose Butter" and "Dragon" were published by being imprinted on cloth with the statutory mark and sold to Lilly Pulitzer and others. The evidence simply does not bear out the contention of the defendant that any of the material was sold without the mark.

The defendant, however, makes a further double thrust: first, that the demonstration of the original drawing of the work which was ultimately copyrighted to a prospective purchaser for the purpose of inducing that purchaser to buy material imprinted with the design was a publication within the meaning of the Act; and second, that the publication of the design in a promotional magazine article utilized as an advertisement by the manufacturer of dresses imprinted with the design with the knowledge and encouragement of the copyright holder, without the statutory mark, was a dedication of the design to the public.

■ The short answer to the first contention is that the renderings (and this is what was shown) are not a publication and a notice on them was not required, Title 17, U.S.C.A. § 26. Furthermore, they were not even the complete design.

■ In any event, under the circumstances here shown, the exhibition of the renderings to Miss Pulitzer to get her opinion or reaction was not a publication resulting in a dedication of the expression of the idea to the public. Even a limited distribution of copyrighted material to prospective purchasers for sales purposes has been held not to affect a forfeiture. Burnett v. Lambino, S.D.N.Y.1962, 204 F.Supp. 327.

■ On February 8, 1963, an article appeared in Life Magazine which contained pictures of Lilly Pulitzer's shift dresses, and which were in part identified as being made from the plaintiff's copyrighted designs. No doubt the plaintiff cooperated with Miss Pulitzer in connection with the Life article. It was a good promotional scheme. It succeeded for Lilly and it enhanced the plaintiff's sales. The fact remains, however, that all of the plaintiff's material was printed with the copyright notice beginning with that which first left the factory. Of course, once there was a publication of the goods with the copyright notice, plaintiff did not have subsequent control over the goods. Here the material was sold to Miss Pulitzer, who had it made

into dresses and had it photographed for Life Magazine. Plaintiff's "cooperation" did not require it to insist that the statutory mark be displayed in the photographs used by Life.

Relying on Title 17, U.S.C.A. § 13,[2] defendant insists that the plaintiff's delay in complying with the Act's requirements and alleged misstatements in the application invalidate the copyrights.

In November 1962, both "Dragon" and "Zuzek Rose Butter" were published. The original publication date, stated in the application to have been December 31, 1962, was in error. There was no showing, however, that this was other than an innocent misstatement, unaccompanied by fraud or intent to extend the statutory period of copyright protection and does not, therefore, invalidate the copyright. Advisors, Inc. v. Wiesen-Hart, Inc., 6 Cir.1956, 238 F.2d 706; cert. den. 1957, 353 U.S. 949, 77 S.Ct. 861, 1 L.Ed.2d 858.

The "Dragon" design was deposited in the copyright office on March 11, 1963, and "Zuzek Rose Butter" on May 8, 1963. Defendant notes that some of the plaintiff's fabrics had a copyright notice of "Key West Fabric Company" and that the corporate name "Key West Hand Print Fabrics, Inc." didn't come into existence until early March 1963. Defendant also takes the position that plaintiff permitted eleven months to elapse before bringing suit, and this, with plaintiff's delay in completing its registration, induced the defendant to continue to sell the infringing articles—thus, the action is barred by laches.

The delay in registration was explained by the plaintiff as the result of production problems. So-called "Lilly's" became the rage of the dress-buying public in late 1962 and early 1963, and the demands on the manufacturing of fabric in Key West was great. In any event, registration in the copyright office is only a prerequisite to suit and does not affect the efficacy of the copyright itself. Washingtonian Publishing Company v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470.

While it is true that the company's original name, "Key West Fabric Company," was changed by charter amendment to "Key West Hand Print Fabrics, Inc." and some of the material with the new name may have appeared before the official change of name took place in the Secretary of State's office, this does not affect the validity of the copyright. Indeed, it is not necessary that the owner's true name be used at all so long as a name with which it is identified is used and no innocent persons are misled. Moreover, the defendant was a knowing infringer and aware of the existence of the copyright. Dan Kasoff, Inc. v. Novelty Jewelry Company, Inc., et al., supra; Scarves by Vera, Inc. v. Fabrex Corp. S.D.N.Y. 1961, 129 U.S.P.Q. 395.

There may, of course, be instances where inexcusable delay resulting in prejudice will raise a defense of laches irrespective of the statutory period of three years,[3] but this is not such a case. Here the defendant knew of the plaintiff's rights and was a deliberate infringer. That is enough. Nimer on Copyright, Section 136.

The many defenses interposed have been fully considered and are found to be either inapplicable or not supported by the evidence. The copyrights No. K67524 ("Zuzek Rose Butter") and No. K66990 ("Dragon") issued to the plaintiff by the Register of Copyrights are valid.

That the defendant was an infringer would seem abundantly established. However, it takes the position, succinctly stated, that its articles are as similar to the public domain material as they are the copyrighted material,

---

2. This section requires a copyright holder to promptly deposit two completed copies of the best edition then published in the copyright office.

3. Title 17, U.S.C.A. § 115(b).

and thus, there is no infringement. Differences in the garments manufactured of plaintiff's material by Lilly, as compared with the garments manufactured by the defendant, are pointed out, i. e., in the "Dragon" design the Lilly background is full of intricate detail while the defendant's is not; the subjects appear to be arranged and planned differently on the cloth; Lilly has a symmetrical pattern while the subjects in the design imprinted on the defendant's are scattered; the dragon's features are different, etc. In the "Zuzek Rose Butter" the butterflies are different; the rose background is such that at a distance it becomes indistinguishable as a design, etc. In sum, the defendant denies that it copied any original or conceptual "expression" of the plaintiff.

 The defendant has stated "with tongue in cheek" that it assumes "that the court is proficient in buying women's dresses since it refused to permit experts to lend their advice to the court on the subject of the means used to attract the eye of the female buyer." While the court may lack such proficiency, it is not a disqualifying judicial requisite, for in copying a copyright the test is that of an ordinary observer, not an expert. Here the differences in design are purely incidental and anyone who did not set out to detect the disparities might well overlook them and regard the aesthetic appearances as the same. Peter Pan Fabrics, Inc. v. Martin Wiener Corp., supra; and Doran v. Sunset House Distributing Corp., S.D. Cal.1961, 197 F.Supp. 940, 947.

Furthermore, it was established by a comparison of the fabric design of "Dragon" in defendant's dresses with the actual acetates from which plaintiff's fabrics were made that the defendant's design was an exact copy. Defendant likewise made an exact copy of the "Zuzek Rose" from "Zuzek Rose Butter" and in other instances, copied backgrounds from some copyrighted material

and combined them with overprints from others, i. e., the butterflies of "Zuzek Rose Butter" were used by the defendant on an entirely different background.

Infringement by the defendant of plaintiff's copyrighted "Zuzek Rose Butter" and "Dragon" was clearly established. Copies manufactured by the defendant were sold by it to retail outlets in violation of the copyright protection.

 In addition to the infringement counts, plaintiff asserts a claim for unfair competition under Title 28, U.S.C.A. § 1338(b).[4] There was no showing that the defendant palmed off its dresses as being the product of the plaintiff or misrepresented to the public that it manufactured "Lilly's." On the contrary, each dress had a Serbin tag sewed into the garment, a hand tag affixed indicating it was manufactured by Serbin, and was on a Serbin hanger. While the defendant knowingly copied plaintiff's designs and color combinations and used them in making dresses and sold them at a price lower than the plaintiff did, this does not constitute unfair competition. Cheney Brothers v. Doris Silk Corporation, 2 Cir.1929, 35 F.2d 279; cert. den. 281 U.S. 728, 50 S.Ct. 245, 74 L.Ed. 1145. See also the recent cases of Sears Roebuck & Co. v. Stiffel Co., 1964, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 661; and Campco Corp. v. Day-Brite Lighting, Inc., 1964, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669. Plaintiff attempts to distinguish this case because of a *special relationship* between the plaintiff and defendant through its principal customer Lilly, (because Lilly bought her fabrics from the plaintiff and had her garments manufactured in a plant which was owned one-half by the defendant through its employees). But this did not create or constitute a confidential relationship between the plaintiff and defendant which is essential for a holding of unfair competition in this category of cases.

4. "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws."

It follows that Counts One and Four of the Complaint should be dismissed; that plaintiff is entitled to an injunction restraining and enjoining the defendant from directly or indirectly infringing copyrights No. K67524 and No. K66990 by either making or causing to be made, selling or causing to be sold, copies of these copyrights. Plaintiff is further entitled to have tendered to it by the defendant all copies of the copyrighted garments still in the possession of the defendant within thirty days from the entry of judgment.

This cause is set on the 26th day of November, 1965, at 10 a. m. for a further hearing on damages and attorneys' fees.

This Opinion shall be treated as the court's Findings of Fact and Conclusions of Law on the issue of liability.