Carol Crosswell SMITH, Plaintiff-Appellee,

v.

**LITTLE, BROWN & COMPANY,**
Defendant-Appellant,

and

**Edith Patterson Meyer, Defendant.**

No. 266, Docket 29994.

United States Court of Appeals
Second Circuit.

Argued March 9, 1966.

Decided May 23, 1966.

Marvin L. Schwartz, New York City, for appellee.

Horace S. Manges, New York City (Gabriel Kaslow, Marshall C. Berger, and Weil, Gotshal & Manges, New York City, on the brief), for appellant.

Before SMITH, HAYS and ANDERSON, Circuit Judges.

HAYS, Circuit Judge:

Plaintiff alleges that defendants' preparation and publication of a book called *Pirate Queen* which was signed by Edith Patterson Meyer infringed plaintiff's common law copyright on an unpublished manuscript called *Pirate Queen of Connaught*. Defendant Meyer was not served with process. Jurisdiction is based on

diversity of citizenship. The district court held defendant Little, Brown & Company liable and enjoined further publication of *Pirate Queen*. We affirm the decision of the district court.

■ The district court's finding of possibility of access was based upon substantial evidence. Plaintiff's manuscript was submitted to Little, Brown & Company on April 18, 1957. It was in their possession from that date until May 29, 1957. During this period, Williams, an executive of Little, Brown, told plaintiff that the juvenile department of the company was interested in publishing her book. At that time Helen Jones was Juvenile Editor of Little, Brown. On May 29, 1957 Miss Jones wrote to Williams as follows:

"I thought that you might like to know that I had some discussion about a possible children's book concerning the 'Queen' to be written by Edith Patterson Meyer * * * my thoughts about her in connection with the 'Pirate Queen' are two at present:

(1) she might be interested in ghosting the unpublishable manuscript you have now or

(2) you might decide that the 'Queen' is a better juvenile project than adult and it might be well to wait a couple of years for Mrs. Meyer's version."

Miss Jones thereafter had extensive contacts with Mrs. Meyer and worked with her on the manuscript of *Pirate Queen*.

■ Both Miss Jones and Mrs. Meyer denied that there had been any communication between them with respect to plaintiff's manuscript, except for a casual remark about it on one occasion. Both denied having read the manuscript or any copy or summary of it. The credibility of this testimony was an issue to be determined by the trial judge. See Beggs v. Dougherty Overseas, Inc., 287 F.2d 80, 82 (2d Cir.1961). His determination was adverse to defendants' contentions.

■ The trial judge's findings of similarity are also supported by substantial evidence. Both plaintiff's manuscript and Mrs. Meyer's book concern Grania O'Malley who was a historical character but about whom few facts are known. Of the similarities in fictional elements in the two works (see De Acosta v. Brown, 146 F.2d 408 (2d Cir. 1944), cert. denied 325 U.S. 862, 65 S.Ct. 1197, 89 L.Ed. 1983 (1945)) the trial judge said:

"It is difficult to believe that two people, each sitting down to write a book about Grania O'Malley, entirely independent of each other, would each decide to begin the story on Grania's eighteenth birthday, would each recount that Grania went to watch for her father's return from sea, would each conceive the idea of a party upon her father's return, and would each provide a substantially similar account of that party. The difficulty of ascribing this to coincidence becomes insuperable when we add to this parallel the fact that in each book Grania's horse is named Maeve, in each book she is upbraided for clothing not befitting 'a woman grown,' and that in each book, on her way to watch for her father, she discusses or reflects upon Queen Elizabeth. Nor do I think it plausible that each author would independently invent the unusual matrimonial arrangement under which Grania agreed to spend half her time with her husband's people and half with her own. There is no need to repeat here all the resemblances which are made manifest by the summaries I have heretofore set forth of the opening chapters of the two works, the parallel between the characters of gnarled Old Annie and faithful old Nessa, or between loyal self-effacing Teigue and equally loyal self-effacing Thomas, or the coincidence of the sea fights in which Grania first demonstrates her warlike prowess or the fact that in each book Grania demonstrates her skill in marksmanship at an early stage."

It is unnecessary to list other similarities to which the trial court refers.

The evidence of possibility of access when taken together with the elements of similarity provide sufficient basis for the trial court's finding of infringement. See Nikanov v. Simon & Schuster, Inc., 246 F.2d 501 (2d Cir. 1957); Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946); De Acosta v. Brown, supra. Of course, the law of New York governs but that law appears to be the same as the federal law applicable to statutory copyright. See Fendler v. Morosco, 253 N.Y. 281, 171 N.E. 56 (1930).

Affirmed and remanded for ascertainment of plaintiff's damages.