John A. BOTT and Jac Products, Inc., Plaintiffs-Appellees,

v.

FOUR STAR CORPORATION, a Michigan Corporation, Defendant-Appellant.

Appeal No. 86–931.

United States Court of Appeals, Federal Circuit.

Dec. 18, 1986.

Charles A. Miller, Covington and Burling, Washington, D.C., argued for defendant-appellant. With him on the brief were Elliott Schulder and James E. McCollum.

Don K. Harness, Harness, Dickey and Pierce, Birmingham, Mich., argued for plaintiffs-appellees. With him on the brief were H. Keith Miller and Jeffrey A. Sadowski.

Before BALDWIN,* Circuit Judge, COWEN, Senior Circuit Judge, and ARCHER, Circuit Judge.

COWEN, Senior Circuit Judge.

## DECISION

This is an appeal from a judgment of the United States District Court for the Eastern District of Michigan,[1] awarding damages in the accounting phase of a patent infringement suit. We affirm in part, reverse in part, and remand the case for further proceedings in accordance with this opinion.

## BACKGROUND

Four Star Corporation (Four Star) manufactures and sells automobile parts, including luggage carriers (luggage racks, or racks) to the automobile industry. Both Four Star and appellee, John A. Bott (Bott), hold numerous patents covering luggage racks for motor vehicles. Four Star and Bott frequently compete against each other in bidding for contracts from automobile manufacturers. John Bott owns Jack Bott Sales, Inc., which in turn owns JAC Products, Inc. (JAC). Jack Bott Sales, Inc. is not involved in this litigation. The two patents-in-suit owned by Bott (United States Patent Nos. 4,099,658 and 4,182,471) are designated herein as the '658 patent and the '471 patent. Both disclose an article carrier or a luggage rack for automobiles.

Four Star seeks reduction of the lower court's damage award against it for its patent infringing activities. On April 27, 1983, after a lengthy trial, the district court found Four Star liable for the infringement of both of Bott's luggage carrier patents. The infringing devices sold by Four Star were designated in the record as the Fiat rack, which was sold to Fiat Auto U.S.A., Inc. (Fiat) and American Motors Corporation (AMC), and as the J-car rack, which was sold to General Motors Corporation (GM). *Bott v. Four Star Corp.*, 218 USPQ 358 (E.D.Mich.1983) *aff'd* 732 F.2d 168 (Fed.Cir.1984). The trial judge granted but stayed a permanent injunction, pending an appeal to this court.

During the stay, Four Star continued its sales of the infringing luggage racks. The district court found that the grand total of infringing sales was $3,450,239, and that

---

* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

1. 229 USPQ 241 (E.D.Mich.1985).

over 80 percent of these sales were made between the district court's initial decision of liability on April 27, 1983 and June 1984.

On March 21, 1984, we affirmed the judgment as to liability in an unpublished decision. *See Bott v. Four Star Corp.*, 732 F.2d 168 (Fed.Cir.1984) (table). Four Star continued the infringing sales for an additional 3 months after our decision. The district court found that more than 20 percent of the infringing sales were made during that 3–month period.

On September 28, 1984, the stay was lifted. A trial on the accounting phase of the case took place in August and September 1985. The final judgment, entered on January 10, 1986, ordered Four Star to pay $339,839 to Bott, $1,359,359 to JAC Products, (Bott's manufacturing company), and $280,000 in attorney fees jointly to Bott and JAC.

Of the total award, $601,609 was an increased damage penalty for willful infringement. The district court found that all of Four Star's sales constituted willful infringement. The court determined that a doubling of the damages was appropriate for the infringing sales made after the trial court's decision on liability was upheld by this court.

In its appeal, Four Star raises the following issues:

a. Did the district court abuse its discretion in awarding damages to JAC for Four Star's sales to Fiat, for which JAC did not compete?

b. Was the district court's finding of willful infringement and the award of increased damages and attorney fees clearly erroneous and an abuse of discretion?

c. Did the district court inadvertently award treble damages for certain infringing sales?

d. Did the district court err in its treatment of appellant's laches defense?

## DISCUSSION

### I. *The Damage Award for Sales to Fiat*

Four Star challenges the district court's decision on the ground that since JAC did not compete on Four Star's sales to Fiat, the award of damages to JAC on the basis of the Four Star sales to Fiat was obviously a mistake. The district court awarded JAC, Bott's wholly owned company and exclusive licensee under the patents, $61,406.00 in loss of profit damages, plus interest. Since the district court also determined that all of the infringing sales were willful, the award to JAC based on the Fiat sales was, according to appellant, increased by an additional $12,281.20.

The district court's decision was based, in part, on the following quotation from our decision in *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21, 223 USPQ 591, 598 (Fed.Cir.1984):

Whenever determining the quantum of a damage award adequate to compensate a patent holder for infringement, the district court may consider the profits the patent holder lost as a result of the infringement. In particular, the award of lost profits is proper when it can be demonstrated that "but for" the infringement, the patent holder would have made the sales. *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 616, 222 USPQ 654, 663 (Fed.Cir.1984). To justify a damage award equal to lost profits, the patent holder can present affirmative evidence of the demand for his patented product in the marketplace, the absence of acceptable noninfringing substitutes, his production and marketing capacity to meet the demand, and computations on the loss of profits. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1579, 220 USPQ 490, 494 (Fed.Cir.1983). A patent holder can most commonly show these elements when the parties involved in the action are the only suppliers. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065, 219 USPQ 670, 675 (Fed.Cir.1983.)

Relying on the same case, Four Star argues that no damages should have been awarded based on Four Star's sales to Fiat, because JAC did not compete for the Fiat

business and there is no proof that JAC would have made the sales to Fiat but for the infringement.

After a careful study of the court's decision, we have concluded that there is lacking any finding, either evidentiary or ultimate, that JAC would have earned a profit on sales to Fiat but for Four Star's infringement. All of the references in the court's opinion respecting the damages to JAC are to the sales by Four Star to GM and AMC. Specifically, the district court found:

> Jac is a manufacturer. Jac's interest was in obtaining the profit to be made in selling carriers to GM and AMC.
>
> *    *    *    *    *    *
>
> * * * Jac did not compete for the Fiat business. On the J–Car Rack, but for the award by GM to Four Star as a second source, Jac would have received all of the GM business. As to the infringing sales to AMC, Jac clearly had the production and marketing capability to fill AMC's requirements and Jac carried its burden of proving the reasonable probability that it would have obtained the AMC business but for Four Star. There were no other manufacturers of the low profile, high-styled carrier desired by AMC. Additionally, since it was a two-supplier market, "causation may be inferred." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065, 219 USPQ 670, 675 (Fed.Cir.1983).

229 USPQ at 248.

In addition, the transcript of the proceedings in the accounting action shows that JAC's counsel made the following admission regarding JAC's entitlement to damages:

> Jac Products did not bid against Four Star for the Fiat car business, so Plaintiffs are not entitled to Jac Products' lost profits for Fiat, but Jack Bott is entitled to adequate compensation and not less than a reasonable royalty on the Fiat business.

Jt. Appendix at 155.

Bott argues that the award of lost profits due JAC is supported by *Arriflex Corp. v. Aaton Cameras, Inc.*, 225 USPQ 487, 489 (S.D.N.Y.1984). However, in contrast to the situation here, there was a specific finding in *Arriflex* that but for the existence in the marketplace of the infringing camera, purchasers of that camera would have bought the Arriflex camera. 225 USPQ at 487, 488.

Since he relied on *Magna-Graphics*, the district judge apparently believed that his findings met the requirements of that decision. We cannot make the findings of fact that are necessary to justify the award to JAC. Nevertheless, we think that under the circumstances, a remand is appropriate. Accordingly, that portion of the district court's decision and judgment which awarded damages to JAC based on Four Star's sales to Fiat is vacated and the case is remanded with instructions to the district court to make additional findings of fact and conclusions of law on this issue. The district court may make such determinations on the basis of the existing record, and at its option, with or without any additional submissions by the parties.

## II. *Willful Infringement, Increased Damages and Attorney Fees*

Four Star contends that the district court erred as a matter of law in concluding that Four Star willfully infringed on Bott/JAC's patents and in awarding increased damages and attorney fees. *See* 35 U.S.C. §§ 284, 285. Four Star claims that it made the sales in good faith reliance on competent legal opinions that the patents were invalid or that Four Star's racks were not infringing. Four Star also challenges the added damage award for continued sales made by Four Star after the district court had entered a stay of its injunction pending appeal. It argues there can be no basis for concluding that Four Star infringed "willfully" when it performed in a manner specifically authorized by judicial order. Four Star also contends that the award of increased damages for the 3–month period following this court's affirmance of the district court decision on liability was unjustified.

A. *Willful Infringement—In General*

In determining whether an infringer acted in bad faith as to merit an increase in damages awarded against him, the court will consider the totality of the circumstances, *Shiley, Inc. v. Bentley Laboratories*, 794 F.2d 1561, 1568, 239 USPQ 112, 115 (Fed.Cir.1986), including (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, and (3) the infringer's behavior as a party to the litigation. *Lam, Inc., v. Johns-Manville Corp.*, 668 F.2d 462, 474–75, 213 USPQ 1061, 1071 (10th Cir.), *cert. denied*, 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982); *accord Yarway Corp. v. Eur-Control, U.S.A., Inc.*, 775 F.2d 268, 277, 227 USPQ 352, 358 (Fed.Cir.1985).

Contrary to appellant's contention, a finding of willful infringement is a finding of fact, not a conclusion of law. As such, it is reviewable under the clearly erroneous standard. *Ralston Purina Co. v. FAR-MAR–CO., Inc.*, 772 F.2d 1570, 1577, 227 USPQ 177 (Fed.Cir.1985); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389, 219 USPQ 569, 576 (Fed.Cir.1983). The district court made the following findings of fact: The history of Four Star's activities following the issuance of the '658 patent was marked by indifference to Bott's rights and to Four Star's obligation as a potential infringer. Four Star was aware of Bott's design long before the patent was issued and had knowledge of the '658 patent before Four Star sold a single Fiat rack. The J-car rack infringed Bott's patent and was designed by Four Star which used drawings furnished by GM, which had in turn been furnished by Bott. In making the sales to Fiat, Four Star ignored Bott. In the sales to GM, Four Star knowingly copied Bott's carrier. In the sales to AMC, Four Star was indifferent to Bott. This indifference continued when Four Star obtained the business from AMC.

When a potential infringer has actual notice of another's patent rights, he has the duty to "exercise due care to determine whether or not he is infringing." This usually includes the duty to seek and obtain competent legal advice before engaging in activity that may result in infringement. *Underwater Devices, Inc.*, 717 F.2d at 1389–90, 219 USPQ at 576. The district court found:

> [T]here is no evidence that at any time after July 11, 1978 Four Star either asked for or received a written legal opinion on validity, including an analysis of the file history of either the '678 patent or '471 patent, or on infringement, including an analysis comparing and contrasting the Fiat Rack or J–Car Rack to the '678 patent or '471 patent.

229 USPQ at 246.

Although Four Star's first in-house counsel (Mr. Weintraub) testified that he gave a detailed, written opinion to Four Star, the district court found that his testimony was not credible. Four Star has not made the showing that is necessary to persuade us to substitute our judgment for the trial court's credibility determinations.

The court's finding is also supported by evidence that Mr. Brooks (who succeeded Weintraub as Four Star's in-house counsel) gave oral opinions to Four Star, but these consisted merely of conclusory statements without supporting reasons. Therefore, they did not constitute authoritative opinions "upon which a good faith reliance on invalidity may be founded." *Kori Corp. v. Wilco Marsh Buggies & Draglines*, 761 F.2d 649, 656, 225 USPQ 985, 989 (Fed.Cir.1985).

B. *Willful Infringement During the Stay of the Injunction*

In the initial decision on liability, the district court found that Four Star knew, or should have known, that Bott's improvement on the carriers in issue was patentable and that Four Star sales of its racks would subject Four Star to liability as an infringer. *See* 218 USPQ at 361.

In the judgment entered April 25, 1983, pursuant to that decision, Four Star was permanently enjoined from making, selling, or delivering luggage carriers covered by the claims of Bott's patents. However, the district court ordered that the injunction be stayed until final disposition of the case on appeal, subject to the posting of a bond by Four Star in the amount of $100,000.

■ In this appeal, Four Star contends that the court made an error of law in awarding increased damages for willful infringement based on the sales that occurred after the stay of the injunction. Four Star argues:

Thus, the court in effect punished Four Star for engaging in sales that the court itself had permitted it to make. This perverse result constitutes a clear error of law warranting modification of the increased-damages award.

Appellant's Brief, at 25–26.

We reject this contention on several grounds. The record in this case shows that at and prior to the time the stay was issued, the court expressly warned Four Star that it was risking liability for increased damages and attorney fees if the infringement continued. As already stated, the district court in its liability decision, found that Four Star knew that Bott's improvement on the carriers was patentable and that the sale of racks by Four Star would subject it to liability for infringement. Later, in referring to this statement in the accounting decision of December 16, 1985, the district court declared:

Whether rhetorical or not, anyone knowledgeable in patent law who read that statement would not be surprised that affirmance of my decision by the Court of Appeals might result in a substantial claim for damages, given the success of the AMC business.

229 USPQ at 247.

The district court also stated in the decision on liability:

I assume Bott will file a motion for attorney fees, 35 USC Section 285. Upon Bott's application, if any, and Four Star's response the deputy clerk will set a hearing. Likewise any request for threefold damages, 35 USC Section 284, will be heard on application and response.

218 USPQ at 379.

Moreover, the judgment on liability ordered Four Star to account to Bott for damages; stated that the award of damages would commence within 90 days after the date of judgment, and continued with the following:

[D]iscovery on damages and amounts on issues related to the final award of damages, such as alleged willful infringement, the alleged exceptional nature of this case with regard to an award of attorneys fees, and the date of commencement of statutory interest in the amount of the damages, shall proceed forthwith.

*Bott v. Four Star Corp.*, No. 971438 (E.D. Mich., April 27, 1983) (Judgment).

In view of these warnings by the district court, we find there was no reasonable basis for Four Star to assume that the stay of the injunction constituted a judicial license to Four Star to continue and to increase greatly its infringing activities.

Four Star relies on the generally accepted principle that the stay of an injunction is granted to preserve the status quo pending an appeal. *McClatchy Newspapers v. Central Valley Typographical Union No. 46 International Typographical Union*, 686 F.2d 731, 734 (9th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); 7 J. Moore, MOORE'S FEDERAL PRACTICE, ¶ 62.05, at 62–19 (2d ed. 1979); 11 Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, § 2904 at 320 (1973).

■ However, Four Star's infringing sales after the appeal to this court amounted to $2,760,191 of the total infringing sales of $3,456,239. The enormous increase in infringing sales during this period is ample proof that the status quo was not preserved during the appeal. Moreover, Four Star in its brief admits that:

[S]anctions [in the form of increased damages] would be permissible * * * where the defendant engages in conduct affecting a substantial change in the status quo pending appeal.

Appellant's brief at 29.

### C. *Willful Infringement After This Court's Affirmance of the Trial Court's Holding on Liability*

■ As previously stated, 20 percent of Four Star's infringing sales occurred in the 3-month period between this court's summary affirmance of the district court's liability opinion on March 21, 1984 and the cessation of sales to AMC in mid-June 1984. It is apparent that the district court regarded these sales as the most egregious of Four Star's infringing activities, because the court doubled the increase in punitive damages for the sales during that period. In attempting to excuse these infringing activities, Four Star presented evidence to the effect that as early as January 28, 1983, it assembled a team to change the design of its luggage carriers to avoid further infringement. Four Star claims that more than 1 year (3 months after the court's affirmance) was required to complete the changeover. However, after considering the evidence regarding the change-over, the district court determined:

> On the other hand there was no excuse for the three month delay after affirmance in the changeover to close-end carriers. As soon as Four Star knew of the affirmance, it had an obligation to stop its infringing activities and should have been in a position to do so. Whatever steps were necessary to make the changeover should have been in place; they were not.

229 USPQ at 255.

After reviewing the record, we hold that this finding and conclusion by the court are amply supported by the evidence.

### D. *Increased Damages and Attorney Fees*

■ In summary, we find that Four Star has failed to show that the district court's subsidiary and ultimate findings on willfulness are clearly erroneous. We further find that the district court properly based its findings and conclusions on the totality of the circumstances and did not abuse its discretion in awarding increased damages for willful infringement. *See Underwater Devices*, 717 F.2d at 1390, 219 USPQ at 577.

■ Although the awarding of attorney fees is discretionary, it is authorized in exceptional cases. In view of the finding of willful infringement, the discretionary award of attorney fees was entirely proper. *See Kori Corp. v. Wilco Marsh Buggies & Draglines*, 761 F.2d 649, 657, 225 USPQ 985, 990 (Fed.Cir.1985).

### III. *Treble Damages or Double Damages*

As previously stated, the district court found that all of Four Star's infringing activities were willful. Pursuant to 35 U.S.C. § 284, the trial judge had the authority to award up to three times the amount of damages found or assessed. However, the parties are in sharp dispute, and we are in doubt, as to whether or not the trial judge made a mathematical error in computing the amount of the damages in accordance with the statements in his opinion.

In his decision, the trial judge stated that he had examined Four Star's financial statement and found that a threefold increase in damages would severely affect Four Star's financial condition and was not warranted. Accordingly, after considering all of the circumstances, the trial judge determined that a multiplier of 20 percent should be used in assessing increased damages for the sales to Fiat and AMC that occurred prior to April 1984. However, on the infringing sales to GM and AMC that took place from April through June 1984 (after our affirmance of March 21, 1984), the court found "a doubling of damages appropriate."

Appellant contends that instead of doubling the basic award of damages for the

infringing sales after April 1984, the trial judge mistakenly included a threefold increase in the amount of such damages. Consequently, appellant says that as a result of this mathematical error, the amount awarded is $238,387 greater than the amount to which Bott and JAC would have been entitled according to the formula stated in the court's opinion. Appellant further claims that the court's computation also includes an erroneous increase of $12,281.20 for the infringing sales to Fiat for which JAC did not compete.

Appellees counter with the assertion that the court intended a *200 percent* increase in the initial award and that as a result, the damages for the infringement after April 1984 were trebled.

We have considered the parties' contentions, have compared the figures presented with the statements in the court's opinion, and find that we are not certain as to the court's intention.

If the mathematical error was as obvious and apparent as Four Star contends, its attorneys could have and certainly should have requested the court, pursuant to Fed. R.Civ.P. 60(a), to correct the alleged mistake, either at the time the judgment was entered or before the appeal was docketed. Instead, appellant's counsel approved the judgment as to form prior to its submission to the district court and delayed until appellant's brief was filed in this court to request relief on account of the alleged mathematical error. However, since the case will be remanded to the district court on the issue discussed in Part I of this opinion, we have decided that this issue should also be remanded to the district court. Promptly after the remand, appellant should file a Rule 60(a) motion requesting correction of the alleged mistake. At that time, the district judge may either affirm or modify the award in conformity with his intent in the accounting decision of December 16, 1985.

#### IV. *Four Star's Laches Defense*

In the district court, Four Star asserted that JAC's right to damages was barred by the doctrine of laches. Noting that a party asserting laches as a defense must prove the unreasonableness of the delay in filing suit, the district court stated:

> Nothing in the evidence suggests Four Star was prejudiced by the timing of Jac's entry into the case.

229 USPQ at 247.

Thus, the district court implicitly ruled that Four Star failed in its burden to show that it was prejudiced by the delay.

In this appeal, Four Star argues that the district court erred in placing the burden of proof on the laches issue on Four Star.

In order to sustain a defense of laches in a patent case, a defendant must normally prove an unreasonable and inexcusable delay, together with prejudice or injury resulting from the delay. *See Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741, 220 USPQ 845, 850 (Fed.Cir. 1984). However, where the plaintiff has delayed more than 6 years in filing suit, the delay is presumptively unreasonable and the burden shifts to the patentee or its licensee to rebut the presumption of prejudice. *See Id.* at 742, 220 USPQ at 850; *TWM Manufacturing Co. v. Dura Corp.*, 592 F.2d 346, 348, 201 USPQ 433, 435 (6th Cir.1979).

The 6–year period does not start running until the issue date of the patents. *See* Chisum, PATENTS § 19.05[2] at 19–164–165. *Watkins v. Northwestern Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1161, 208 USPQ 545, 556 (6th Cir. 1980). The '658 patent was issued July 11, 1978 and the '471 patent was issued January 8, 1980. Since JAC's suit was filed within less than 6 years after the issuance of the '471 patent, the burden to prove unreasonable delay with respect to that patent was on Four Star, and the district court correctly held that Four Star failed to establish that it was prejudiced by the time of JAC's entry into the case.

On September 15, 1977, Bott filed a Petition to make Certain in the United States Patent and Trademark Office in order to expedite the approval of Bott's '658 patent, because of the impending infringement

Bott had observed in Four Star's Fiat rack. Therefore, when the '658 patent was issued on July 11, 1978, JAC was charged with the knowledge of Four Star's infringing actions.

■ On August 22, 1984, Bott moved to add JAC and Jack Bott Sales as parties to the case in the district court. On September 19, 1984, JAC, along with Jack Bott Sales, filed a complaint in the district court seeking damages as a result of the past infringing sales by Four Star. The motion was denied on September 28, 1984, but the complaint was consolidated with Bott's original action, except that Jack Bott Sales was dismissed with prejudice from the consolidated case. If either August 22, 1984 or September 19, 1984 is used as the date for establishing JAC's entry into the case, it is clear that JAC's suit was filed more than 6 years after July 11, 1978, when the '658 patent was issued. Consequently, we agree with Four Star that the district court erred in its treatment of the laches defense as to the '658 patent, and that the burden of proof on this defense was shifted to JAC. *See Leinoff,* 726 F.2d at 741, 220 USPQ at 850.

■ Laches is an equitable defense and its existence must be determined in each case under its particular facts. It is a question primarily addressed to the discretion of the trial court. *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 616 F.2d 1315, 1325, 206 USPQ 577, 586 (5th Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *Anaconda Co. v. Metric Tool & Die Co.,* 485 F.Supp. 410, 427, 205 USPQ 723, 737 (E.D.Pa.1980).

In *TWM Manufacturing Co. v. Dura Corp.,* 592 F.2d 346, 349, 201 USPQ 433, 435 (6th Cir.1979), the court ruled that although the plaintiff's delay in filing suit

for more than 6 years created a presumption of laches, the plaintiff could defeat the bar by showing that the defendant was guilty of egregious conduct, for such a showing would change the equities in plaintiff's favor. The court also held that "proof of plagiarism would not favor defendant's claim of laches." *Id.*

In *TWM Manufacturing Co. v. Dura Corp.,* 722 F.2d 1261, 1268, 221 USPQ 25, 30, (6th Cir.1983), the court affirmed the district court's holding that the plagiarizing of the plaintiff's patent constituted egregious behavior, which defeated the defendant's plea of laches. The district court supported its holding by relying on principles of copyright law and trademark law [2] and held that the plaintiff's proof that the defendant had access to the patent and had contemporaneously produced an infringing device, shifted the burden to the defendant to prove independent development of the infringing device. In *Anaconda, supra,* the court held that a deliberate construction of a duplicate of the machine covered by the plaintiff's patent was sufficient to prove the kind of egregious conduct which changes the equities in favor of the plaintiff. 485 F.Supp. at 429–30, 205 USPQ at 739–40.

■ Although the district court did not make an explicit finding that Four Star was guilty of egregious conduct, there is no need to remand the case on this issue because that finding is implicit in the court's findings. *See* Part II, *supra.* Among these is the finding that "in the sales to GM, Four Star knowingly copied Bott's carrier," and the finding that Four Star inexcusably accelerated its infringing sales after this court had affirmed the district court's decision on liability. Consequently, we hold that Four Star's defense of laches was defeated by its egregious conduct.

---

**2.** *See Smith v. Little, Brown & Co.,* 360 F.2d 928, 930, 149 USPQ 799, 800 (2d Cir.1966); *Universal Pictures Co. v. Harold Lloyd Corp.,* 162 F.2d 354, 372, 73 USPQ 317, 331 (9th Cir.1947); *MY–T Fine Corporation v. Samuels,* 69 F.2d 76, 77, 21 USPQ 94, 95 (2d Cir.1934); *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.,* 244 F.Supp. 287, 291, 147 USPQ 138, 141 (S.D.Fla.1965); 3 Nimmer on Copyright, § 12.06 at 12–54.9 (1985).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.