**Susan M. MAXWELL, Plaintiff,**

v.

**J. BAKER, INC., and Prange Way, Inc., Defendants.**

**Civ. No. 4–90–941.**

United States District Court,
D. Minnesota,
Fourth Division.

March 10, 1995.

Earl D. Reiland, Daniel W. McDonald, Alan G. Gorman, and Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, MN for Susan Maxwell.

James J. Foster, Philip G. Koenig, Douglas R. Wolf, and Wolf, Greenfield & Sacks, P.C., Boston, MA and Bruce H. Little, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, MN, for J. Baker, Inc.

## ORDER

DOTY, District Judge.

Based on the jury verdict returned in her favor, plaintiff Susan M. Maxwell ("Maxwell") moves for entry of judgment and award of treble damages, attorney fees and prejudgment interest. In exercising its discretion on these matters, the court brings to bear its familiarity with the case and the competing policies of the patent laws being enforced. Based on a review of the file, record and proceedings herein, and for the reasons stated below, the court grants Maxwell's motion.

## BACKGROUND

Maxwell is the owner of record and named inventor of United States Patent No. 4,624,-060 (" '060 patent"). On November 10, 1993, after a month long trial, a jury verdict upholding the '060 patent and finding infringement was returned. The jury found that J. Baker used and continues to use shoe connection systems which infringe the patent and that the infringement by J. Baker after 1990—when it had actual notice of the patent—was willful. To compensate Maxwell for infringement the jury awarded approximately $3 million in damages. By separate order, the court has upheld the jury's finding of willful infringement and denied J. Baker's motions for judgment as a matter of law and a new trial.[1]

---

1. The commencement of J. Baker's willful infringement corresponds with its actual notice of the infringement. The jury found that although the shoe connection systems used by J. Baker between 1986 and 1990 infringed the '060 patent, such infringement was not willful. The jury also found that Maxwell gave J. Baker actual notice of the infringement on June 14, 1990, and that J. Baker's infringement after 1990 was willful. J. Baker argued that the jury's finding of willfulness may be based on its use of some shoe connection systems and not others. The court has held, however, that the jury's finding of willful infringement is properly interpreted as turning on J. Baker's actual notice rather than on the

### 1. Prejudgment Interest

 Upon a finding of patent infringement, 35 U.S.C. § 284 directs the court to add interest and costs to the damages award to afford complete compensation to the patentee. Prejudgment interest should be awarded absent some justification for withholding such an award. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 103 S.Ct. 2058, 2063, 76 L.Ed.2d 211 (1983). Asserting that Maxwell delayed unduly in bringing suit, J. Baker urges the court not to award prejudgment interest for the three years and five months prior to April 1990. Withholding prejudgment interest based on delay, however, is the exception, not the rule. *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed.Cir.1988). The court has already rejected J. Baker's laches defense. In doing so, the court found that J. Baker was not materially prejudiced as a result of Maxwell's delay in bringing suit. In the absence of prejudice to J. Baker any delay by Maxwell does not warrant a denial of prejudgment interest. *Id.* Accordingly, the general rule that prejudgment interest should be awarded applies and Maxwell is entitled to prejudgment interest from November 1987 to the date of judgment. The prejudgment interest applies only to the compensatory award of $3.05 million, not to any increased damages awarded by the court.

 Both parties agree that the interest should be compounded annually. The parties disagree, however, as to the appropriate rate of interest. Maxwell claims that the rate should correspond to a composite of the annual corporate bond rate for J. Baker.[2] Such a rate, according to Maxwell, ensures that J. Baker does not obtain an undue benefit. J. Baker responds that Maxwell's approach ignores the compensatory nature of prejudgment interest. J. Baker urges the court to apply the 52 week Treasury bill rate which is the rate Maxwell could have earned had she invested the money. Neither party points to any part of the factual record that requires

or justifies one rate over the other. The court declines to adopt either rate proposed by the parties. The purpose of awarding prejudgment interest is to compensate Maxwell for the time value of money and the court has discretion to determine which rate of interest will best accomplish that purpose in this case. The court finds that an award of prejudgment interest at the prime rate compounded annually will adequately compensate Maxwell for the loss of the use of her money over time.

 The parties also disagree on how the damage award should be allocated over the period of infringement. Maxwell estimates that between 1988 and 1991 J. Baker sold 5 million pairs of infringing shoes per year. For 1992 and 1993, Maxwell assumes that J. Baker's infringing sales increased to an annual rate of 6.6 million based on evidence of higher sales in those two years. J. Baker contends that the allocation of damages should correspond to the sales figures Maxwell used at trial. The amount of infringing sales found by the jury corresponds to roughly 45 percent of the sales asserted by Maxwell. J. Baker argues that an appropriate allocation is achieved by taking 45 percent of Maxwell's sales figures between November 1987 and August 1993. Maxwell responds that J. Baker crafted its approach to lower the amount of prejudgment interest by shifting more sales to recent years. Maxwell contends that her approach is more balanced and adequately reflects J. Baker's increasing sales during recent years. While any attempt to reconstruct the jury's damage calculation is speculative, the court finds that J. Baker's method of allocating damages is a more reasonable interpretation of the jury's finding concerning the amount of infringing sales. Accordingly, prejudgment interest and any increased damages shall be awarded on this basis.

### 2. Enhancement of Damages

 Maxwell seeks treble damages pursuant to 35 U.S.C. § 284, which provides that a

---

particular type of shoe connection system employed.

**2.** The average rates for J. Baker as calculated by Maxwell are 9.56% in 1988 and 1989, 10.87% in 1990, 10.16% in 1991, 9.53% in 1992 and 6.75% in 1993.

trial court "may increase the damages up to three times the amount found or assessed." An award of enhanced damages is committed to the discretion of the district court. A finding of willfulness justifies an award of treble damages but does not mandate that damages be increased. In determining whether to enhance damages, the court considers the egregiousness of the defendant's conduct based on all the facts and circumstances. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed.Cir.1992).

The Federal Circuit has identified three primary factors for determining when an "infringer acted in [such] bad faith as to merit an increase in damages awarded him." *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed.Cir.1986). Those factors are: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; and (3) the infringer's behavior as a party to the litigation. *Id.* The *Bott* factors are not exclusive. *Read*, 970 F.2d at 827. The court may also consider secondary circumstances including defendant's size and financial condition, the closeness of the case, the duration of defendant's misconduct, any remedial action by the defendant, defendant's motivation for harm and whether defendant attempted to conceal its misconduct. *Id.* The court also takes into account the punitive nature of enhanced damages and the goal of deterring infringement.

J. Baker insists that increased damages are not warranted because it did not knowingly copy Maxwell's patented system. The evidence before the court, however, indicates that J. Baker deliberately copied the idea and design of Maxwell's patented invention. J. Baker did not investigate the scope of the patent. Rather, when faced with imminent litigation for patent infringement, J. Baker simply made a snap decision to move the location of the loops without even examining the language of the '060 patent. This is not a case, as J. Baker would have the court believe, where a defendant made a misjudgment in determining whether the patented device was "designed around" enough to avoid infringement. J. Baker asserts that it carefully designed the counter pocket and top line systems to avoid infringing the '060 patent and that it believed in good faith that those systems did not infringe the patent claims. Although it argued the issue vigorously, J. Baker has offered scant evidence of good faith efforts to design around the claims of the '060 patent.

Evidence of a good faith belief in noninfringement is also lacking. J. Baker did not consult counsel on the questions of patent infringement or validity before adopting the counter pocket and top line systems.[3] The court recognizes that the failure to seek the advice of counsel compels neither a finding of willfulness nor enhanced damages. The combination of facts and circumstances present here, however, convince the court that J. Baker did not exercise the requisite degree of due care or make any serious attempt to design around the '060 patent. To the contrary, J. Baker blatantly dismissed the patent and proceeded without a good faith belief that the patent was invalid or not infringed.

Other considerations also support an award of increased damages. J. Baker is one of the nation's largest independent operator of licensed shoe departments. Maxwell, an individual, has survived years of hotly contested litigation against J. Baker that threatened to drain her financial resources. The record suggests that J. Baker knew Maxwell would have difficulty funding a long, expensive lawsuit. The undertaking was made more formidable by the common defense group formed by J. Baker and other large companies within the shoe industry, all of whom have refused to license the patented system. J. Baker has not ceased using the infringing systems or taken any other remedial action. J. Baker has continued to in-

---

**3.** "It is well settled that a potential infringer having actual notice of another's patent rights has an affirmative duty of due care. That affirmative duty will normally entail the obtaining of competent legal advice before engaging in any potentially infringing activity or continuing such activity." *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 181 (Fed.Cir.1994) (quotation omitted).

fringe the '060 patent after express notice, after suit was filed and after the jury verdict finding willful infringement was returned. At no point during this case has J. Baker established separate records to distinguish infringing and noninfringing sales.

Based on the totality of the circumstances, including the jury's finding of willfulness, the court finds that enhancement of damages is warranted in this case. J. Baker should not be allowed to knowingly infringe a valid patent for almost five years and be punished only by paying a somewhat enhanced royalty. Maxwell suggests that the total damage award should be increased. However, because a finding of willful infringement is a prerequisite for increased damages, only those damages awarded to Maxwell after June 14, 1990, may be enhanced. Accordingly, the court trebles the compensatory damages awarded to Maxwell after June 14, 1990. The allocation of damages during this period shall conform to the approach the court has adopted for calculation of prejudgment interest. The court directs that any interim royalties which accrue to Maxwell as a result of J. Baker's continued infringement are also subject to trebling.

### 3. Attorney Fees

■■■■ Under 35 U.S.C. § 285, the court may award attorney fees to the prevailing party in "exceptional cases." The decision whether or not to award attorney fees is committed to the discretion of the court. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed.Cir.1990). In support of her motion, Maxwell relies on the heavy weight of authority that a finding of willful infringement and "exceptional case" go hand in hand. *Id.* J. Baker responds that the case is not exceptional and that an award of fees is not warranted because the finding of infringement was only partial. Based on the totality of the circumstances, including the jury's finding of willfulness and the facts which support that finding, the court deems this case to be exceptional and holds that Maxwell is entitled to recover reasonable attorney fees.

### 4. Accounting of Infringing Sales

■■■ The jury's findings and award of damages are based on J. Baker's sales through August 5, 1993, the date of the most recent data available at the time of trial. Maxwell seeks an accounting to determine the amount of J. Baker's infringing sales between August 5, 1993, and the effective date of an injunction. J. Baker requests that an accounting be deferred until the liability issues are finally resolved. Maxwell fears that unless an immediate accounting is ordered J. Baker will not keep adequate records to distinguish infringing and noninfringing sales. Based on J. Baker's conduct to date Maxwell has reason for concern. J. Baker did not establish separate records after being charged with infringement in 1990. Nor is there any indication that J. Baker has established such records since the jury verdict was returned.

Although Maxwell is entitled to an accounting, the court declines to order one at this time. By separate order, however, the court has granted Maxwell injunctive relief and declined to stay the injunction pending appeal. The injunction shall become effective May 1, 1995. In the event that the injunction is stayed on appeal, the court directs J. Baker to immediately establish and implement a record keeping system which distinguishes between infringing and noninfringing sales. Within fourteen days of the stay, J. Baker shall submit a detailed affidavit to the court describing the record keeping procedure. Pending a final accounting, J. Baker shall provide Maxwell and the court with a summary of infringing sales on a quarterly basis. The court believes that such an approach adequately addresses Maxwell's legitimate concerns.

### CONCLUSION

Based on the foregoing and the verdict returned by the jury on November 10, 1993, **IT IS HEREBY ORDERED** that:

1. Judgment is entered against defendant J. Baker, Inc. and in favor of plaintiff Susan M. Maxwell on the claim of infringement of United States Patent No. 4,624,060.

2. Judgment is entered against defendant and in favor of plaintiff in the amount of $3,050,000 as compensatory damages for J. Baker's infringement of the '060 patent.

3. Based on the jury's finding that J. Baker's infringement after June 14, 1990, was willful, the damages awarded to Maxwell after that date, including any interim royalties, shall be trebled pursuant to 35 U.S.C. § 284.

4. J. Baker shall pay Maxwell prejudgment interest from November 1987 to the date of judgment. The prejudgment interest applies only to the award of $3,050,000, not to the increased damages, and shall be calculated as described above.

5. Maxwell shall recover reasonable attorney fees from J. Baker pursuant to 35 U.S.C. § 285.

6. The final calculation of damages, prejudgment interest and attorney fees is reserved by the court pending appeal and shall be calculated after a final accounting of infringing sales in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**