**George W. JURGENS and Margaret M. Jurgens, Plaintiffs–Appellants,**

v.

**CBK, LTD. and CBK, Ltd., Inc., Defendants/Cross–Appellants.**

**Nos. 94–1498, 94–1521.**

United States Court of Appeals, Federal Circuit.

April 9, 1996.

Jeff H. Eckland, Faegre & Benson, Minneapolis, Minnesota, argued, for plaintiffs-appellants. With him on the brief were William L. Roberts and R. Carl Moy. Also on the brief was W.J. Michael Cody, Burch, Porter & Johnson, Memphis, Tennessee.

Albert C. Harvey, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, Tennessee, argued, for defendants/cross-appellants. With him on the brief were Steven B. Crain and Rebecca Adelman.

Before MAYER, Circuit Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

MAYER, Circuit Judge.

George W. Jurgens and Margaret M. Jurgens appeal from a judgment of the United States District Court for the Western District of Tennessee, refusing to increase the Jurgenses' damages or award attorneys fees incurred as a result of patent infringement by CBK, Ltd. and CBK, Ltd., Inc. *Jurgens v. CBK, Ltd.*, No. 89–1140 (W.D.Tenn. Aug. 17, 1994). CBK appeals the denial of its motions for a new trial and for judgment as a matter of law that the Jurgenses' suit was barred by issue or claim preclusion. We affirm-in-part, vacate-in-part and remand.

*Background*

In 1980, George W. and Margaret M. Jurgens (the Jurgenses) obtained a license to sell windsock duck decoys covered by U.S. Patent No. 4,062,141 ('141 patent) from the patentee, Jelmer Shejeflo. Sales started slowly, but grew rapidly after the Jurgenses began selling the decoys as lawn ornaments. They eventually purchased both Shejeflo's patent rights and his "North Wind" trademark.

In 1985, CBK, Ltd. and CBK, Ltd., Inc. (CBK) obtained a North Wind decoy at a trade show, and used it to create a competing decoy which CBK had manufactured in Taiwan. It began selling these decoys in 1986. Later that year, the Jurgenses sued Timothy McKasy, one of CBK's distributors, for infringement of the '141 patent in the United States District Court for the District of Minnesota.[1] The Jurgenses also sued both CBK and McKasy for trade dress infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1994), and for violation of Minnesota deceptive trade practices law. CBK openly defended the action against its distributor.

A jury found the patent not invalid and willfully infringed. The district court entered judgment against McKasy for both patent and trade dress infringement, and against CBK for trade dress infringement. It doubled the patent and Lanham Act damages against McKasy and trebled the Lanham Act damages against CBK. This court subsequently affirmed all but the increase of the Lanham Act damages. *Jurgens v. McKasy*, 927 F.2d 1552, 1564, 18 USPQ2d 1031, 1040–41 (Fed.Cir.1991).

In 1989, the Jurgenses began the present patent infringement case against CBK in the Western District of Tennessee. Prior to trial, the court denied CBK's motions for summary judgment that the Jurgenses' present infringement claims were barred by res judi-

---

1. The Jurgenses state that they did not sue CBK for patent infringement in the Minnesota case because the restrictive interpretation of the patent venue statute, 28 U.S.C. § 1400(b) (1988), prior to amendment of the general venue statute, 28 U.S.C. § 1391(c) (1988 & Supp. V 1993), and this court's *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 16 USPQ2d 1614

(Fed.Cir.1990), would not permit it. *See, e.g., Schnell v. Eckrich & Sons, Inc.*, 365 U.S. 260, 262, 81 S.Ct. 557, 559–60, 5 L.Ed.2d 546, 128 USPQ 305, 306 (1961); *Holub Indus. v. Wyche*, 290 F.2d 852, 854, 129 USPQ 242, 243 (4th Cir.1961). Nevertheless, CBK preemptively opposed such a claim in its answer asserting improper venue.

cata because of the Minnesota litigation and that the Jurgenses were collaterally estopped from relitigating infringement damages. The court granted the Jurgenses' motion for partial summary judgment, holding that CBK was precluded from contesting the validity of the '141 patent and its own infringement because CBK had controlled the Minnesota litigation.

The remaining issues of compensatory damages and willful infringement were tried to a jury. The Jurgenses presented evidence tending to prove that CBK did not rely on a competent opinion of counsel, but had blatantly copied a commercial embodiment of the '141 patent. CBK countered that it had relied on the opinion of its patent counsel to avoid infringement and that its actions were thus not willful or in bad faith.

The trial judge submitted the issue of willful infringement to the jury with an instruction asking "whether under all the circumstances the defendants conducted themselves willfully *and* in bad faith in selling their product." (Emphasis added). The Jurgenses objected to this part of the instruction claiming that it required a finding of bad faith for them to prevail on willful infringement. The judge further instructed the jury that:

CBK, if it had actual knowledge of the Jurgens' patent, had an affirmative duty to exercise due care to ensure that it would not infringe the patent before it used or sold any of the CBK wind-inflated decoys. Copying of an invention covered by a patent is evidence of willfulness.

CBK's affirmative duty included the duty to seek and obtain competent legal advice from an attorney before starting any possibly infringing activity or continuing such activity. To satisfy its duty, any advice that CBK received from its attorney, along with the other circumstances, must have been such as to justify believing, in good faith, that the Jurgens' patent would be held invalid or not infringed. The mere fact that CBK may have received advice from its attorney is not dispositive but should be considered along with the totality of the circumstances in this case.

. . . .

Upon learning of a patent or the filing of a suit, the potential infringing party may exercise due care by continuing to manufacture and presenting what, in good faith, it believes to be legitimate defenses without risk, on that basis alone, it will be found a willful infringer.

In determining whether the defendants willfully disregarded the rights of plaintiffs, the intention of the defendants is material. You should consider any evidence that demonstrates defendants' intentions. Such evidence you may consider include—include whether defendants sought legal advice regarding the possibility of infringement and validity of the patent; was there an attempt by the defendants to develop a non-infringing device; whether defendants had knowledge of the patent and suit before entering the market; and the defendants' behavior as a party to the litigation, whether the defendants asserted defenses in bad faith.

The jury's special verdict form contained the question: "Under all the circumstances, was the defendants' conduct willful, as that term has been defined by the court?"

The jury returned its verdict awarding the Jurgenses lost profits of $537,584.93, and finding that CBK's conduct was willful. The Jurgenses moved for entry of judgment and requested an award of treble damages, attorneys fees, and prejudgment interest. The district court held that sufficient evidence supported the jury verdict and denied CBK's motions for judgment as a matter of law and for a new trial. Although upholding the finding of willful infringement, the court refused to award increased damages or attorneys fees because CBK relied upon the opinion of its patent counsel and because the Jurgenses failed to clearly mark their decoys with notice of their patent. Both sides appeal.

## Discussion

■ Upon a finding of infringement, section 284 of the Patent Act requires the court to award "damages adequate to compensate for the infringement." 35 U.S.C. § 284

(1994). The same section also gives the court discretion to "increase the damages up to three times the amount found or assessed," but gives no criteria for doing so. *Id.* Absent statutory instructions, we have interpreted the increased damages part of section 284 as requiring a two step process. *State Indus. v. Mor–Flo Indus.,* 948 F.2d 1573, 1576, 20 USPQ2d 1738, 1740 (Fed.Cir. 1991). First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances. *See Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826–27, 23 USPQ2d 1426, 1435–36 (Fed.Cir. 1992).

■ Because increased damages are punitive, the requisite conduct for imposing them must include some degree of culpability. *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512, 1523, 35 USPQ2d 1641, 1649 (Fed.Cir.1996)(en banc) ("Intent becomes a requirement only if and when the patent owner seeks enhanced damages or attorneys fees for willful infringement."); *Beatrice Foods Co. v. New England Printing & Lithographing Co.,* 923 F.2d 1576, 1579, 17 USPQ2d 1553, 1555 (Fed.Cir.1991) ("[E]nhanced damages may be awarded only as a penalty for an infringer's increased culpability, namely willful infringement or bad faith. Damages cannot be enhanced to award the patentee additional compensation to rectify what the district court views as an inadequacy in the actual damages awarded.").[2] An act of willful infringement satisfies this culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award. *Read Corp.,* 970 F.2d at 826, 23 USPQ2d at 1435; *State Indus.,* 948 F.2d at 1576, 20 USPQ2d at

1740; *S.C. Johnson & Son v. Carter–Wallace, Inc.,* 781 F.2d 198, 201–02, 228 USPQ 367, 369 (Fed.Cir.1986).

■ Increased damages also may be awarded to a party because of the bad faith of the other side. *King Instruments Corp. v. Perego,* 65 F.3d 941, 947, 36 USPQ2d 1129, 1133 (Fed.Cir.1995)("The Patent Act also includes enhanced damages for willful infringement or bad faith and for attorneys fees."); *Hilton Davis Chem. Co.,* 62 F.3d at 1519, 35 USPQ2d at 1646 ("Proof of bad faith by an infringer may entitle the patent owner to enhanced damages and attorneys fees for willful infringement. . . . "); *Yarway Corp. v. Eur–Control USA, Inc.,* 775 F.2d 268, 272–73, 277, 227 USPQ 352, 355, 358 (Fed.Cir. 1985)("The court [concluded] that the infringement was not willful, but the result of bad faith efforts to circumvent [a] license agreement. Enhancement of damages, based on 35 U.S.C. § 284, was therefore premised solely on this bad faith."). The correlation between bad faith, willful infringement and increased damages, however, is sometimes misunderstood because the term "bad faith" has numerous patent law applications. Only some of these are relevant in determining the predicate culpability for an increased damages award.

■ Bad faith is used, for example, in referring to misconduct in the prosecution of or litigation over a patent. Such conduct includes inequitable conduct during patent prosecution, bringing vexatious or unjustified suits, attorney or client misconduct during litigation, or unnecessarily prolonging litigation. These acts by themselves, however, are not sufficient for an increased damages award under section 284 because they are not related to the underlying act of infringement and say nothing about the culpability of the infringer.[3] Only a culpable infringer can be held liable for increased damages, not an

---

**2.** Infringement itself, however, is a strict liability offense, *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512, 1527, 35 USPQ2d 1641, 1653 (Fed.Cir.1995)(en banc), and a court must award "damages adequate to compensate for the infringement," 35 U.S.C. § 284, regardless of the intent, culpability or motivation of the infringer.

**3.** Courts have tools to punish egregious misconduct. The listed actions are typical of "exceptional case" conduct upon which an award of attorneys fees may be based under 35 U.S.C. § 285 (1988). Other sanctions include attorneys fees pursuant to Fed.R.Civ.P. 11, Fed. R.App. P. 38, or 28 U.S.C. § 1927 (1994). *See also* Fed. R.Civ.P. 37.

innocent one. *See Read Corp.,* 970 F.2d at 830, 23 USPQ2d at 1438 ("While dicta suggests that infringement damages may be enhanced solely by reason of misconduct during litigation, such dictum is contrary to our precedent that '[i]f infringement [is] ... innocent, increased damages are not awardable for the infringement.' *Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d [1565,] 1580, 230 USPQ [81,] 91 [ (Fed.Cir.1986) ]."} The listed acts might be evaluated to determine if the infringer acted willfully in light of the totality of the surrounding circumstances. The ultimate fact to be proven, that is, the basis for increased damages, however, would be that the infringement was willful, not that litigation activities were improper. Thus, although an infringer's inequitable conduct in prosecuting his own patents, or his egregious conduct in infringement litigation may be sufficient for other sanctions or fee awards, or may be used as a factor in determining whether or how much to increase a damages award once sufficient culpability is found, *Read Corp.,* 970 F.2d at 826, 23 USPQ2d at 1435, these actions are not sufficient independent bases to justify increased damages under section 284.

 Instead, in the initial determination of culpability, and thus liability for increased damages, "bad faith" properly refers to an infringer's failure to meet his affirmative duty to use due care in avoiding infringement of another's patent rights. *Underwater Devices Inc. v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1389–90, 219 USPQ 569, 577 (Fed. Cir.1983); *see also Amsted Indus. v. Buckeye Steel Castings, Inc.,* 24 F.3d 178, 181, 30 USPQ2d 1462, 1464–65 (Fed.Cir.1994). If an infringer adequately performs this duty by determining that, for example, an asserted patent is invalid, that there is no infringement, or that his conduct is covered by licensing agreements, he will not be held liable for increased damages. Even if a party is subsequently found to be infringing another's patent despite its investigations, it will be liable only for compensatory damages, not increased damages, if it performed its affirmative duty in good faith. *See Delta–X Corp. v. Baker Hughes Prod. Tools, Inc.,* 984 F.2d 410, 413, 25 USPQ2d 1447, 1449 (Fed. Cir.1993); *Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 944, 22 USPQ2d 1119, 1125–26 (Fed.Cir.1992).

 On the other hand, where one continues his infringing activity, and fails to investigate and determine, in good faith, that he possesses reasonable defenses to an accusation of patent infringement, the infringement is in bad faith. Such conduct occurs when an infringer merely copies a patented invention, or where he obtains incompetent, conclusory opinions of counsel only to use as a shield against a later charge of willful infringement, rather than in a good faith attempt to avoid infringing another's patent. Thus, "bad faith" is more correctly called "bad faith infringement," and it is merely a type of willful infringement.

In defending the Jurgenses' claim of willful infringement, CBK presented evidence that upon notice of possible infringement it immediately contacted an attorney with many years of experience in the field of patent law and obtained an opinion that either it was not infringing the patent or that the patent was invalid. The Jurgenses countered with evidence that CBK blatantly copied a commercial embodiment of the patent and that the opinion of its attorney was not only wrong, but it did not meet the minimum standards of competency. They maintained that the opinion contained only a conclusory analysis of literal infringement and no analysis whatsoever of infringement under the doctrine of equivalents. And they presented evidence that CBK continued to infringe the '141 patent even after the Patent and Trademark Office reexamined the patent, considered CBK's arguments, and still upheld its patentability.

 After a thorough instruction on the law of willful infringement and defenses to it, the jury found that CBK's conduct was willful. The jury thus determined as a factual matter that CBK acted with the requisite culpability to justify an award of increased damages. The trial judge concluded that there was substantial evidence to support the jury's determination. The first step in the willful infringement process was complete; predicate liability was found. The judge then had discretion whether, and to what

extent, to increase the Jurgenses' compensatory damages award, and whether to award attorneys fees based on "the egregiousness of the defendant's conduct based on all the facts and circumstances of the case." *Read Corp.*, 970 F.2d at 826–28, 23 USPQ2d at 1435–36.

The trial judge decided not to award increased damages or attorneys fees because the Jurgenses "did not clearly and visibly mark their decoys to show that they were patented" and because "the Defendants immediately sought the advice of an experienced patent attorney when they learned that there was an allegation that their windsock decoys were infringing Plaintiff's patents." He thus concluded that "Defendants' conduct in manufacturing and selling the windsock decoys was not an egregious and flagrant infringement which justifies enhanced damages" and declined to award increased damages or attorneys fees "because Defendants' conduct was the result of reliance upon the opinion of counsel."

■ In light of the contrary jury finding and the questionable relevance of the Jurgenses' patent marking to the question of increased damages or attorneys fees, however, we conclude that the judge abused his discretion. Upon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys fees. *See, e.g.*, *S.C. Johnson & Son*, 781 F.2d at 201, 228 USPQ at 369 (necessary for trial court to explain why case was not exceptional after express finding of willful infringement); *but see Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1584, 27 USPQ2d 1836, 1845–46 (Fed.Cir.1993)(express findings not necessary if record provides sufficient basis for reviewing trial court's exercise of discretion). In this case, the reasons provided by the trial court do not support a decision not to increase the damage award and the record does not make up for this deficiency.

■ Considering the detailed jury instruction, which included the elements of willful infringement, the defenses to it, and an additional requirement that CBK act in bad faith, the only way the jury could have reached the decision that CBK's conduct was willful was to reject its contention that it relied in good faith on the opinion of counsel. Additionally, the jury instruction specifically required a finding of bad faith, even though bad faith is not required for a finding of willful infringement, *see, e.g.*, *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 902, 229 USPQ 525, 529 (Fed.Cir.1986). In returning its verdict of willfulness, the jury necessarily decided that CBK had acted in bad faith, thus rejecting its defenses to willful infringement.

Because the jury had rejected CBK's assertion that it acted in good faith as a matter of fact, the court did not have discretion to reweigh the evidence about the competency of the opinion or CBK's reliance on it. Although a trial court many times has discretion to weigh the closeness of the case and the scope of the infringer's investigation in deciding whether to increase a damages award, it does not have discretion to reweigh this evidence once the matter has been decided by the jury and the court finds evidence sufficient to support the jury determination.

■ Aside from the impropriety of second guessing the jury, the court's evaluation of the competency of the opinion also was inadequate. The competency requirement applies to both the qualifications of the person giving the opinion and to the content of the opinion itself. The court apparently considered only the qualifications of the attorney and not the adequacy of the opinion. To reasonably rely on an opinion, it must be authoritative, not just conclusory, and objective. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson, Inc.*, 976 F.2d 1559, 1580, 24 USPQ2d 1321, 1339 (Fed.Cir.1992) ("[A] potential infringer ... has an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe.... The emphasis here must be on 'competent' legal advice."). The steps "normally considered to be necessary and proper in preparing an opinion" include a thorough review of the cited prior art and prosecution history. *Underwater Devices*, 717 F.2d at 1389–90, 219 USPQ at 577. If infringers

could rely on any opinion to defeat willful infringement, no matter how incompetent, insulation from increased damages would be complete.

The district court also considered the location of the Jurgenses' patent notice marking as a circumstance mitigating an award of increased damages. There was directly conflicting evidence about when CBK had actual notice of the Jurgenses' patent rights, and there was also evidence of constructive notice provided by the Jurgenses' marking. Actual notice of the patent would, of course, render constructive notice unnecessary to trigger the affirmative duty of due care to avoid infringement. In fact, the jury instruction stated that an infringer must have actual notice to trigger the duty to use due care. When the jury reached its verdict that CBK acted willfully and in bad faith in infringing the patent, it necessarily determined both that CBK had notice of the Jurgenses' patent rights and that it acted in disregard of those rights. The court may not disregard this or make contrary findings in deciding whether to increase damages or award attorneys fees.

 Because the two factors relied upon to mitigate an increased damages award were not appropriate, the district court abused its discretion in light of the jury's findings of willful infringement and bad faith. And since the court gave no independent reasons for refusing to award attorneys fees, we also conclude that the court abused its discretion in refusing that award in light of the verdict. *See S.C. Johnson & Son,* 781 F.2d at 201, 228 USPQ at 369 (trial court must explain why case was not exceptional after express finding of willful infringement). However, a finding of willful infringement does not mandate that damages be increased or that attorneys fees be awarded, *Read Corp.,* 970 F.2d at 826, 23 USPQ2d at 1435; *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 543, 16 USPQ2d 1622, 1625 (Fed.Cir.1990); *Fromson v. Western Li-*

*tho Plate & Supply Co.,* 853 F.2d 1568, 1572–73, 7 USPQ2d 1606, 1610–11 (Fed.Cir.1988) (even where damages are increased under section 284, a court may decline to award attorneys fees under section 285). Therefore, we remand to give the district court the opportunity to exercise its discretion over these two awards in light of the facts and circumstances of the case.[4] Those facts and circumstances, however, may not include alleged conduct or actions that the jury has expressly rejected as a factual matter or matters that are not relevant to the increased damages or attorney fees issues.

We have also examined CBK's claims of error on the issues of res judicata, collateral estoppel, and lack of evidence to support the award of lost profits. We find no merit in any of the arguments.

### Conclusion

Accordingly, the judgment of the United States District Court for the Western District of Tennessee is affirmed-in-part, vacated-in-part, and the case is remanded for further proceedings.

### COSTS

The Jurgenses shall have their costs.

*AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.*

COWEN, Senior Circuit Judge, dissenting.

I respectfully dissent because, in my opinion, the decision of the majority is plainly contrary to *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555 (Fed.Cir. 1992), and *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538 (Fed.Cir.1990), *cert. denied,* 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991). *Modine* is directly on point. At the trial level in that case, the jury found willful infringement. *Modine Mfg. Co. v. Allen Group,* 14 USPQ2d 1210, 1216, 1989

---

4. As a general rule, attorneys fees under section 285 may be justified by any valid basis for awarding increased damages under section 284. *See Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d 1565, 1580–81, 230 USPQ 81, 91 (Fed.Cir.1986). However, conduct which a court may deem "exceptional" and a basis for awarding attorneys

fees may not qualify for an award of increased damages. *Id.* Even where damages are increased under section 284, a court may decline to award attorneys fees under section 285. *See S.C. Johnson & Son v. Carter–Wallace, Inc.,* 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir. 1986).

WL 205782 (N.D.Cal.1989), aff'd 917 F.2d 538 (1990), *cert. denied,* 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991). The defendant moved for a judgment notwithstanding the verdict (JNOV), based on the fact that the defendant had solicited and received infringement opinions from outside counsel. *Id.* 14 USPQ2d at 1216–17. The trial judge denied defendant's motion for JNOV. *Id.* 14 USPQ2d at 1217. However, the trial judge declined to increase the damages, noting that the willfulness issue was close on the evidence. *Id. Modine* and *Brooktree,* 977 F.2d at 1581, establish that a trial judge may, notwithstanding a jury finding of willful infringement, decline to augment damages because of the closeness of the evidence on the willfulness question.

Although the majority acknowledged our holding in *Modine,* they try to avoid the effect of that decision by relying on several conclusions which I find to be erroneous. The Jurgenses have not made the clear showing that is required to establish that the district court abused the discretion which is committed to it. *Modine,* 917 F.2d at 543.

### I.

The majority concludes that "the only way the jury could have reached the decision that CBK's conduct was willful was to reject its contention that it relied in good faith on the opinion of counsel." I submit that this conclusion is pure speculation without support in the record. We have no way of determining what specific items of evidence the jury thought supported or undercut its finding of willful infringement. Based on the jury instruction and the finding of willful infringement, we know only that the jury believed that at some point in time during the long course of CBK's infringement, CBK's justifications and good faith defenses failed. For example, one of the appellant's principal contentions is that CBK deliberately copied the Jurgenses' invention. The district court instructed the jury that copying an invention is evidence of willfulness. The jury may have found willfulness on the basis of such deliberate copying, even though the jury may have thought that CBK acted in good faith after it sought the advice of counsel. In addition,

the jury was also instructed that it might consider whether CBK attempted to develop a non-infringing device; whether CBK had knowledge of the patent in suit before entering the market; whether CBK asserted defenses in bad faith, and CBK's behavior as a party to the litigation. The jury may have based its verdict on one or more of these factors. In the absence of a specific finding that CBK acted in bad faith in relying on the opinion of its counsel, the majority's conclusion is inherently speculative.

### II.

The majority also concluded that, in view of the jury's finding of willful infringement, the trial judge abused its discretion, because the reasons provided by him did not support his decision not to increase the damages award.

The majority declares that it was inappropriate for the trial judge to consider the markings on the patented decoys. However, CBK presented evidence that its representatives never saw any patent information on the model it had in 1985, and therefore it did not know that there was a patent on the product until it received the cease and desist letter of March 31, 1986. The markings on the product were therefore relevant to the issue of whether CBK had any knowledge of the patent prior to entering the market. This evidence bears on the "closeness" of the willfulness question.

In any event, the trial court primarily relied on the fact that CBK sought the advice of an experienced patent attorney, Mr. Lawrence Maxwell, soon after CBK received a letter claiming that CBK's windsocks infringed the patent. In holding that the reasons stated by the trial judge did not provide an adequate basis for review by this court, the majority relies upon *S.C. Johnson & Son v. Carter–Wallace, Inc.,* 781 F.2d 198 (Fed.Cir. 1986). That decision is clearly inapposite, because in *Johnson* the district court offered no explanation for its decision not to award attorney fees despite a finding of willful infringement. *Id.* at 201. In sharp contrast to the facts in *Johnson,* the trial court here explained that it thought the willfulness issue was close. The trial court also reasoned that

Mr. Maxwell was a patent attorney with approximately fifteen years of experience in patent law practice;[5] that he investigated the claim, studied the patent, examined the alleged infringing product, and that he advised CBK that their decoys did not infringe the Jurgenses' patent. Mr. Maxwell also expressed the opinion that even if there was infringement of the patent, the Jurgenses' patent was not valid. In addition, he testified at trial and a copy of his opinion is in the record.

We have cautioned that a remand should be limited to cases in which further action is required by the district court or in which the appellate court has no way open to it to affirm or reverse the district court's action. *Carroll Touch Inc. v. Electro Mechanical Sys. Inc.*, 15 F.3d 1573, 1584 (Fed.Cir.1993); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814–15 (Fed.Cir. 1990). When this principle is applied here, it is clear that the reasons given by the trial judge plus other facts of record provide an adequate basis for review by this court and support the district court's conclusion that CBK's conduct in manufacturing and selling their decoys was not an egregious or flagrant infringement which justified enhanced damages.

### III.

In its opinion the majority held as follows:

Because the jury had rejected CBK's assertion that it acted in good faith as a matter of fact, the court did not have discretion to reweigh the evidence about the competency of the opinion or CBK's reliance on it.

As stated above in Part I, I disagree with the majority's determination that the jury expressly rejected CBK's contention that it relied in good faith on the opinion of counsel. Assuming *arguendo*, however, that the jury made that finding, I would hold that it was not binding on the trial judge. The majority's conclusion, quoted above, defies logic, is not supported by any cited authority, and is

plainly contrary to the precedents of this court.

In view of *Modine*, the majority acknowledges that the jury's finding of willful infringement does not mandate that the damages be increased or that attorney fees be awarded. Nevertheless, the majority disregards this holding. If the jury's ultimate finding of willful infringement is not binding on the district court, where is the logic in holding that the underlying facts that led the jury to make that ultimate finding are final and binding on the district court?

In declining to enhance damages, the trial court in *Brooktree* reasoned that

the *evidence supporting the jury's finding was not as strong as it could have been,* and is not of the weight and strength that would support the imposition of enhanced damages. Lack of an opinion letter from counsel, and the continued production of the infringing products during litigation are not a sufficient hook upon which to hang an award of enhanced damages.

757 F.Supp. 1088, 1097 (S.D.Cal.1990) (emphasis added), *aff'd*, 977 F.2d 1555 (Fed.Cir. 1992).

In affirming the decision of the district court, this court declared:

In exercising its discretion the trial court may consider the weight of the evidence of willfulness. The court thus considers the culpability of the infringer with due attention to any circumstances in mitigation, the closeness of the question, and any other factors pertinent to the award, in that case, of exemplary damages.

*Brooktree*, 977 F.2d at 1581.

In *Modine*, this court expressly approved the trial judge's consideration of the closeness of the evidence on the issue of willful infringement. 917 F.2d at 543. On this point, the court stated:

Nor is there merit to Modine's contention that the trial judge's statement, that willfulness was "sufficiently close on the evidence" that enhanced damages were not warranted, was inconsistent with the jury verdict that willful infringement had been

---

**5.** Maxwell's credentials are relevant to determining whether CBK could reasonably rely on Maxwell's opinion. *See Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 793 (Fed.Cir.1995).

shown by "clear and convincing evidence." Far from ignoring the jury's verdict, Judge Jensen's opinion demonstrated that he carefully considered the finding of willful infringement in light of the deterrent function of enhanced damages in reaching his determination that enhanced damages were not appropriate to this particular case. Modine has utterly failed to demonstrate that this determination was an abuse of discretion.

*Id.*

These decisions establish that the trial judge may independently weigh the evidence underlying a jury's finding of willfulness in exercising his discretion under 35 U.S.C. § 284. The only significant difference between this case and *Brooktree* and *Modine* is that in the later cases, the trial judges weighed the evidence relating to willful infringement and decided that it was too close to support enhanced damages, whereas in this case the trial judge cited specific evidence that he deemed supportive of the infringer's position, rather than relying on a general statement that the evidence on the question was close. *See* 757 F.Supp. at 1097; 14 USPQ2d at 1217. This distinguishing feature buttresses my opinion, as stated in Part II, that the statements in the trial judge's opinion, plus other material in the record, provide an adequate basis for this court's review of the decision below.

### IV.

I would follow the teaching of *Carroll Touch* in deciding that there is no justification for remanding this case. Therefore, I would affirm the decision of the district court, because I believe that adherence to our precedents requires that result.