**ODETICS, INC., Plaintiff,**

**v.**

**STORAGE TECHNOLOGY CORP.,
et al., Defendants.**

**No. Civ.A. 95–881–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 17, 1998.

Thomas J. Scott, Jr., Scott L. Robertson, Hunton & Williams, Washington, DC, for Crestar Bank, defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This patent infringement action is again before the Court following a jury's verdict of wilful literal infringement.[1] Two damages questions are addressed here: (i) whether the patentee, based on the facts of this case, should be awarded enhanced damages in addition to the reasonable royalty already awarded by the jury, and (ii) whether the Court's earlier laches finding, which truncated the period for which the patentee could recover damages, should be vacated in light of the jury's finding that the infringer wilfully infringed the patent, i.e., that the infringer acted inequitably. For the reasons that follow, both questions must be answered in the negative.

Richard1 A. Simpson, Ross, Dixon & Masback, LLP, Los Angeles, CA, Vincent J. Belusko, Graham & James LLP, Los Angeles, CA, for plaintiff.

Craig C. Reilly, Richards McGettigan Reilly & West, PC, Alexandria, VA (Nanda K. Alapati, E. Bradley Gould, Pennie & Edmonds LLP, Washington, DC, Jon R. Stark, Mark R. Scadini, Pennie & Edmonds LLP, Pala Alto, CA, George C. Summerfield, Rader Fishman & Grauer, PLLC, Bloomfield Hills, Michigan, Herbert F. Schwartz, Mark H. Bloomberg, Fish & Neave, New York City, of counsel), for Storage Technology, defendant.

Craig C. Reilly, Richards McGettigan Reilly & West, PC, Alexandria, VA (Ron E. Shulman, Nina F. Locker, Roger J. Chin, Wilson Sonsini Goodrich & Rosati, PC, Pala Alto, CA, of counsel), for Visa International, defendant.

### I

Plaintiff Odetics, Inc. is the owner of United States Letters Patent No. 4,779,151, issued on October 18, 1988. The '151 patent teaches a system for transporting cassette tapes from a storage library to a tape player. By way of example, the preferred embodiment contains an octagonal housing (often referred to as a silo) inside of which are seven columns of tapes and one column of tape drives, or tape players. Within this housing is a robotic arm that retrieves the tapes from their storage bins and places them into the tape drives. Claims 9 and 14 of the '151, the claims-in-suit, describe a "rotary means" that (i) allows a cassette to be loaded from outside the library, for example by a human operator, and (ii) then rotates to allow the cassette to be accessed by the robotic manipulator located inside the silo.

Storage Technology Corp. ("STK") manufactures and sells certain library systems that Odetics alleged infringed the '151 pat-

---

1. For other decisions chronicling this litigation, see *Odetics, Inc. v. Storage Tech. Corp.*, 906 F.Supp. 324 (E.D.Va.1995) (discussing priority of invention in infringement suits); *Odetics, Inc. v. Storage Tech. Corp.*, 919 F.Supp. 911 (E.D.Va. 1996) (granting summary judgment motion on laches); *Odetics, Inc. v. Storage Tech. Corp.*, 1997 WL 357598 (Fed.Cir. June 25, 1997) (reversing claim construction and remanding for retrial); *Odetics, Inc. v. Storage Tech. Corp.*, 1998 WL 312724 (E.D.Va. June 5, 1998) (discussing effect of laches ruling on issuance of injunction).

ent. STK's systems are used to store and play computer data tapes. The accused STK systems contain "pass-thru ports," devices that connect multiple libraries or silos to each other so that tapes can be passed from one silo to another. Specifically, the tapes are placed in the pass-thru port in one library, and the pass-thru port then translates and rotates to deliver the tape to a second, adjacent library.

Odetics filed this patent infringement action seeking damages from the date the '151 patent issued to the present. The crux of Odetics's infringement allegation was that the rotary means element of claims 9 and 14 read on STK's pass-thru ports. Early in the litigation, STK filed a motion for summary judgment on the ground of laches. This Court found that Odetics had unreasonably and inexcusably delayed in filing this action, and therefore granted the motion. Accordingly, Odetics was precluded from recovering damages for any infringement occurring prior to June 29, 1995, the date this action was filed. *See Odetics*, 919 F.Supp. 911.

Thereafter, the case was tried twice. The first jury found that STK's accused devices did not infringe the '151 patent. Odetics appealed this finding, but elected not to appeal the adverse laches determination; STK, for its part, appealed only one aspect of the laches determination, namely the Court's ruling that the finding of laches did not preclude Odetics from obtaining an injunction with respect to infringing systems sold during the laches period, that is, sold prior to the filing of the complaint.[2] On appeal, the Federal Circuit vacated the jury's verdict on the ground that this Court's original claim construction was erroneous. *See Odetics*, 1997 WL 357598. Thus, the matter was tried to a second jury using the claim construction mandated by the Federal Circuit's opinion. The second jury found infringement by STK, concluded that a 4% running royalty rate was reasonable, and awarded Odetics $70.6 million in damages for STK's manufacture and sale of the infringing products since June 29, 1995. The jury further found that STK wilfully infringed the patent.[3]

Given this verdict, and specifically the finding of wilfulness, Odetics has made two post-verdict motions that are at issue here.[4] First, it has moved for an award of enhanced damages pursuant to 35 U.S.C. § 284. Second, it has moved the Court to reconsider its prior laches ruling in light of the jury's conclusion that STK wilfully infringed the '151 patent. Each of these motions has been argued fully, both orally and in writing, and thus each is now ripe for disposition.

## II

A patentee is entitled to up to treble damages upon a finding of wilfulness. *See* 35 U.S.C. § 284; *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed.Cir.1992).[5] A

---

2. This latter issue was subsequently reargued by the parties in the district court and resolved in STK's favor. *See Odetics*, 1998 WL 312724.

3. The facts supporting the wilfulness finding are easily summarized: First, STK admitted that it knew of the '151 patent within months of its issuance. Second, it did not produce a competent opinion of counsel at trial; instead, the sole testimony it offered to rebut the wilfulness allegation was that of the engineer who reviewed the '151 patent in 1992 and concluded that its rotary means limitation did not read on the pass-thru port. In finding wilful infringement, the jury implicitly rejected this testimony.

Odetics also alleged that Visa International and Crestar Bank, customers of STK and users of the pass-thru ports, infringed the '151 patent. The second jury concluded that Visa and Crestar also infringed, but that their infringement was not wilful. The jury awarded no damages for Visa's and Crestar's use of the infringing devices.

4. Both parties filed other posttrial motions as well: STK filed a motion for judgment as a matter of law and an alternative motion for a new trial on the issue of infringement, and these motions were originally denied. *See* Order, *Odetics v. Storage Tech. Corp.*, No. 95–881 (E.D.Va. May 1, 1998) (hereinafter "May 1, 1998, Order"). Since that denial, the Court has taken under reconsideration the JMOL motion. *See* Order, *Odetics v. Storage Tech. Corp.*, No. 95–881 (E.D.Va. July 10, 1998). STK also filed a motion for a new trial on damages, or in the alternative for a remittitur, which was denied. *See* May 1, 1998, Order. Finally, Odetics's filed a motion for attorney's fees, which was denied, and a motion for prejudgment interest, which was granted. *See id.*

5. Odetics seeks double damages for the period from June 29, 1995, the first date for which it could recover damages for infringement, until February 1, 1996, the date of the first jury's verdict; and treble damages for the period from

finding of wilfulness, however, does not mandate enhanced damages, much less treble damages. *See Read,* 970 F.2d at 826; *Goodwall Constr. Co. v. Beers Constr. Co.,* 991 F.2d 751, 758 (Fed.Cir.1993). Instead, enhancement of damages is within the discretion of the district court and is informed by the totality of the circumstances. *See State Indus., Inc. v. Mor–Flo Indus., Inc.,* 948 F.2d 1573, 1576 (Fed.Cir.1991). If a district court declines to increase the damages award, it must provide its reasons for doing so, taking care not to second-guess or contradict the jury's findings. *See Jurgens v. CBK Ltd.,* 80 F.3d 1566, 1572 (Fed.Cir.1996).

■ The Federal Circuit has established a nine-factor test for determining whether enhanced damages are warranted, and if so, in what amount. *See Read,* 970 F.2d at 827–28. This test is designed to evaluate the egregiousness of the infringer's conduct, and thus contains both aggravating and mitigating factors. *See Read,* 970 F.2d at 826; *see also Graco, Inc. v. Binks Mfg. Co.,* 60 F.3d 785, 794 n. 4 (Fed.Cir.1995) ("The amount of enhancement must bear some relationship to the level of culpability of the conduct."). The nine factors are listed below, with an analysis of each as it applies to the instant case.

1. *Whether the infringer deliberately copied the invention*

Odetics has never alleged that STK copied the invention claimed in the '151 patent.

2. *Whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or not infringed*

The jury's finding of wilfulness mandates a conclusion that STK did not have a good-faith belief in noninfringement. *See Jurgens,* 80 F.3d at 1572 (holding that district courts are bound by jury's determination of wilfulness). There was strong evidence, however, of a good-faith belief in invalidity. At the first trial, STK introduced a videotape showing that a prototype similar to the accused device existed prior to the conception date of the '151. Such evidence could certainly form the basis for a good-faith and meritorious argument for invalidity under 35 U.S.C. § 102(g).[6]

3. *The infringer's behavior as a party to the litigation*

There is no basis in the record for concluding that STK's conduct was either unethical or inappropriate at any point during this litigation.

4. *The infringer's size and financial condition*

Odetics has submitted a newspaper article that indicates (i) that STK's stock, which was trading at about seventy-five dollars, dropped only six cents the day after the jury's verdict, and (ii) that, according to an industry analyst, even treble damages would cause only a five– to fifteen-cent drop in STK's share price. These facts suggest that an enhanced damages award would not significantly jeopardize STK's financial well-being.

5. *The closeness of the case*

Here, the case was certainly a close one; the jury just as easily could have come back

---

June 25, 1997, the date of the Federal Circuit's decision, until March 27, 1998, the date of the second jury's verdict. (The Court has previously excluded from the wilfulness calculus the period from February 1, 1996, until June 25, 1997, given that the first jury's verdict necessarily provided STK with the basis for a good-faith belief, during this period, that it did not infringe the '151 patent.) Odetics thus asks for enhanced damages of approximately $52 million.

6. Because the first jury concluded that there was no infringement, it never reached the invalidity question. Moreover, the second jury did not hear any invalidity evidence, and thus the matter was never decided, given that the Federal Circuit remanded the case solely for a determination of infringement vel non. *See Odetics,* 1997 WL 357598, at *7. The fact that the *jury* could not consider invalidity evidence as part of its *infringement* analysis, however, does not preclude this *Court* from considering such evidence as part of its *enhancement* analysis. *See Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 867 (Fed.Cir.1997) (noting that district court, while bound by jury's factual determinations, may consider evidence not considered by the jury), *petition for cert. filed,* 66 U.S.L.W. 3773 (U.S. May 21, 1998).

with a verdict of noninfringement based on the evidence it heard.[7] In this regard, it is worth noting that Odetics's motions for summary judgment of infringement and for judgment as a matter of law were denied.

### 6. The duration of the infringer's conduct

Although the damages period dates back only to 1995, the infringement began in 1989. STK's unlawful conduct, then, spanned almost ten years; however, because Odetics was guilty of laches for a significant part of that period, the duration of the infringement does not weigh as heavily against STK as it otherwise might.

### 7. Remedial action by the infringer

STK did not take any remedial action once it was notified of the allegation of infringement.

### 8. The infringer's motivation for harm

There is no evidence that STK sought to harm Odetics; indeed, the inventor of the rotary means claimed in the '151 patent admitted that STK and Odetics do not compete with each other.

### 9. Whether the infringer attempted to conceal its infringement

STK widely publicized the accused devices. Even Odetics's Vice President of Corporate Development acknowledged that he knew of the STK products shortly after they were introduced to the market.

In sum, the following factors weigh in STK's favor: (i) there was no allegation of copying; (ii) STK had a good-faith belief of invalidity; (iii) STK engaged in no litigation misconduct; (iv) the case was close; (v) there was no motivation on STK's part to harm Odetics; and (vi) there was no attempt to conceal the infringement. And the following

factors weigh in Odetics's favor: (i) according to the jury's finding of wilfulness, STK had not formed a good-faith belief that it did not infringe the '151 patent; (ii) STK appears to be in strong financial condition; and (iii) STK took no remedial action. Finally, there is a one factor that is neutral, namely the duration of the infringement.

It is evident that most of these factors weigh in STK's favor. Of course, "a district court's assessment of the propriety and amount of enhanced damages is necessarily qualitative, not quantitative." *Applied Med. Resources Corp. v. United States Surgical Corp.*, 967 F.Supp. 861, 864 (E.D.Va.1997), *aff'd* 1998 WL 348008 (Fed.Cir. June 30, 1998). Nonetheless, the fact that few of the factors point conclusively in Odetics's favor, and moreover the fact that the latter two factors that do support Odetics are what might be termed "minor" factors in the calculus, suggest that little, if any, enhanced damages are warranted. Surely the doubling and trebling that Odetics seeks for the two time periods is excessive. *Cf. Applied Medical*, 967 F.Supp. at 864–65 (increasing damages by only one-third when infringer copied invention and lacked competent opinion letters, but when case on infringement was close). Indeed, "[a]n increase in damages for wilfulness . . . is generally inappropriate when the infringer mounts a good faith and substantial challenge to the existence of infringement." *Paper Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 20 (Fed.Cir.1984); *see also Delta–X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 413 (Fed.Cir.1993) ("Therefore, an infringer may generally avoid enhanced damages with a meritorious good faith defense and a substantial challenge to infringement."). Here, STK certainly mounted a "meritorious good faith defense and a substantial challenge to infringement."[8] Given

---

7. Odetics suggests that the fact that the jury deliberated for only three or four hours somehow indicates that the case was not a close one. This is not necessarily so; the jury could have found the case very close, but also could have decided in relatively quick time that the evidence tipped, ever so slightly, in Odetics's favor. Therefore, no confident inference can be drawn from the length of the jury's deliberations.

8. That the jury found that the infringement was wilful does not alter this conclusion: The jury's finding addressed STK's conduct during the infringement period, not its state of mind during the litigation. Thus, a finding of wilful infringement is not inconsistent with a finding that a defendant's challenge at trial to the existence vel non of infringement was made in good faith.

this, and further considering all the relevant factors discussed above, especially the closeness of the case, an increase in damages is inappropriate.[9]

Accordingly, Odetics's motion for enhanced damages must be denied.

### III

In concluding that Odetics was guilty of laches, the Court necessarily found that Odetics had engaged in inequitable conduct. *See Odetics,* 919 F.Supp. at 921 (holding that Odetics was not able to rebut the presumption that its delay in filing this action "was unreasonable and inexcusable"). Odetics asserts that, notwithstanding this conclusion, it should not be foreclosed from collecting damages for infringement that occurred during the laches period because STK is also guilty of inequitable conduct, namely wilful infringement. This argument is ultimately unpersuasive. Succinctly stated, although it is true that there are circumstances in which one who has unclean hands cannot invoke a laches defense, STK's wilfulness does not constitute the type of inequitable conduct that would foreclose it from asserting the defense here. Moreover, Odetics has waived any objection it may have had to the Court's earlier laches ruling by failing to appeal that ruling.

### A. *Procedural Bar*

■ STK's motion for summary judgment on laches was granted on December 20, 1995. When the first jury returned its verdict on

February 1, 1996, the laches ruling merged into the final judgment and became appealable. *See Glaros v. H.H. Robertson Co.,* 797 F.2d 1564, 1573 (Fed.Cir.1986). Odetics did not, however, appeal the Court's determination that it was guilty of laches. That ruling, therefore, became law of the case.[10] *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C.Cir. 1987) ("Under law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.").[11] Odetics argues that the jury's wilfulness finding warrants resurrection of the laches ruling at this time. Odetics is incorrect. To preserve its right to argue that the laches issue was prematurely decided and that the Court should have waited until it could weigh all the equities, including whatever equities attached to a finding of wilful infringement, Odetics should have made that argument in its appeal. Because it did not do so, Odetics has lost its opportunity to argue this issue now. For this reason alone, the motion for reconsideration must be denied.

In any event, assuming there is no waiver, Odetics's argument falls short on substantive grounds, as well.

### B. *Substantive Bar*

■ It is well settled that "a patentee may be able to preclude application of the laches

---

9. It is worth noting that, even if STK were found not to have "mount[ed] a good faith and substantial challenge to the existence of infringement," *Paper Converting Mach.,* 745 F.2d at 20, this Court would still decline to award any enhanced damages, taking into consideration the nine factors enumerated in *Read,* especially the closeness of the case. *Cf. Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 867 (Fed.Cir.1997) (affirming district court's weighing of equitable factors, "most notably the closeness of the case," and its consequent decision not to award attorney's fees, even though the jury had found wilfulness).

10. By contrast, the Court's earlier ruling that a finding of laches did not foreclose the issuance of an injunction with respect to laches-period machines did not become law of the case because STK appealed that ruling and the Federal Circuit

declined to address STK's appeal. *See Odetics,* 1997 WL 357598, at *6 ("We need not decide this issue at this time.... Unless and until ... a finding [of infringement] is made, it would be ill-advised of us to provide a ruling on the laches issue."). Accordingly, that aspect of the laches issue remained unsettled when the case was remanded to this Court for a determination of the infringement question. *See Odetics,* 1998 WL 312724 (holding that the laches finding forecloses Odetics from enjoining the use of infringing systems purchased during the laches period).

11. *See id.* ("Gatlinburg did not raise or challenge the back-rent decision in its first appeal to this court, when it had the opportunity to do so and when it did attack other portions of the damages award. Thus the district court's decision became the law of the case.").

defense with proof that the accused infringer was itself guilty of misdeeds towards the patentee." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1038 (Fed.Cir.1992). This rule finds root in the maxim, "He who seeks equity must do equity." *See id.* To be sure, there are numerous reported decisions in which courts have declined to apply laches based partly on the infringer's inequitable conduct. *See, e.g., Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed.Cir.1986); *Ramos v. Biomet, Inc.*, 828 F.Supp. 1570, 1583 (S.D.Fla.1993), *aff'd in part, rev'd in part*, 69 F.3d 553, 1995 WL 540291 (Fed.Cir.1995); *Aukerman*, 29 U.S.P.Q.2d 1054, 1058, 1993 WL 379548 (N.D.Cal.1993) (on remand).

A mere showing of inequitable conduct on the part of the infringer, however, does not suffice to negate the effect of laches. Instead, the patentee must prove that "the infringer has engaged in *particularly egregious* conduct [that] would change the equities *significantly* in plaintiff's favor." *Aukerman*, 960 F.2d at 1033 (emphases added; internal quotation marks omitted). Thus, many of the cases in which the laches defense was not allowed involved inequitable conduct far more egregious than the wilful infringement found here. *See, e.g., Bott*, 807 F.2d at 1576 (egregious conduct consisted of (i) copying the claimed invention and (ii) "inexcusably accelerat[ing] infringing sales after [the Federal Circuit] had affirmed the district court's decision on liability"); *Aukerman*, 29 U.S.P.Q.2d at 1058 (defendant's construction of new infringing product after litigation commenced, failure to investigate patent's validity, and knowledge that there

was only one licensee constituted "particularly egregious" conduct).[12] And in this regard, several courts have specifically held that wilful infringement, by itself, is insufficient to preclude application of the laches defense. *See, e.g., Western Elec. Co., Inc. v. Piezo Tech.,* 15 U.S.P.Q.2d 1401, 1409, 1990 WL 126269 (M.D.Fla.1990) ("[A] plaintiff's allegations of 'willful infringement' do not automatically bar the alleged infringer from asserting the laches and estoppel defenses . . . ."); *Loral Corp. v. B.F. Goodrich Co.*, 14 U.S.P.Q .2d 1081, 1113 (S.D.Ohio 1989) ("Although BFG's infringement was willful . . . the court is of the opinion that BFG's willfulness during this time period was not characterized by egregious conduct. . . . Thus, BFG is not precluded from asserting laches . . . ."), *rev'd on other grounds*, 899 F.2d 1228, 1990 WL 31725 (Fed.Cir.1990); *Stambler v. Diebold, Inc.*, 11 U.S.P.Q.2d 1709, 1714 (E.D.N.Y.1988) ("[T]he Court is aware of no case that stands for the proposition that willful infringement, without proof of deliberate, calculated plagiarism, constitutes such egregious conduct as to defeat a laches defense."), *aff'd* 878 F.2d 1445, 1989 WL 50518 (Fed.Cir.1989).

Instead, the Court must compare the relative quality of the parties' conduct to determine whether the scales of equity tip "significantly in plaintiff's favor." *Aukerman*, 960 F.2d at 1033. *See In re Yarn Processing Patent Validity Litigation*, 602 F.Supp. 159, 173 (W.D.N.C.1984) ("The conclusion is inescapable that any alleged 'wilful' infringement on the part of Barmag was insignificant compared to the overall demeanor of Lex Tex.").

**12.** *But see Ramos*, 828 F.Supp. at 1583 (defendant who had copy of patent, failed to obtain competent opinion of counsel, and lacked a good-faith belief of noninfringement was barred from asserting laches). To the extent *Ramos* suggests that the circumstances present in that case are always sufficient to preclude application of laches, the decision is inconsistent with the other cases cited here, and it is unpersuasive in light of contrary controlling authority, namely *Bott* and *Aukerman*.

Odetics's citation to *W.L. Gore & Assocs. v. IMPRA, Inc.*, 1990 WL 180490, at *31 (D.Ariz. 1990), is also unpersuasive. The district court in that case held that "[i]f there is a finding that a patent infringement was willful, a finding of egregious conduct is implicit." This conclusion

is unpersuasive for two reasons. First, the district court cites *Bott* in support of this conclusion, but, as noted above, *Bott* requires "egregious" conduct before a laches finding will be denied its usual effect, and *Bott* does not say that wilfulness alone is sufficient to prove egregiousness. Indeed, in that case the egregious conduct consisted of much more than mere wilfulness. Second, the proper test for evaluating motions to preclude a laches defense was announced by the Federal Circuit in *Aukerman*, two years after the district court issued its decision in *W.L. Gore.* Accordingly, it appears that *W.L. Gore* has been implicitly reversed by subsequent, controlling authority insofar as its statement on wilfulness is concerned.

In the final analysis, then, the decision whether to impose laches in the face of an infringer's inequitable conduct is itself an equitable one, and depends largely on the degree of culpability attributable to the defendant and on the nature and extent of the defendant's inequitable conduct. The existing record provides no evidence of STK's inequitable conduct beyond its wilfulness. Nor is the Court convinced that STK's wilful infringement of the '151 patent constitutes conduct any more inequitable—let alone "significantly" more so—than Odetics's unreasonable delay in filing this action. Unlike the case in *Bott* and *Aukerman,* here there was no copying, no acceleration of infringing sales, and no construction of additional infringing products after the litigation began. Accordingly, the Court will not disrupt its earlier laches ruling.[13]

Appropriate Orders will issue.

**13.** Contrary to Odetics's argument, the result reached here does not contradict the jury's finding of wilfulness. *See Jurgens,* 80 F.3d at 1572 (holding that district courts are bound by jury's determination of wilfulness). This Court can conclude that STK was wilful—as it must, given the jury's verdict—but that such wilfulness did not rise to the level of "particularly egregious conduct" so as to support a denial of the laches defense. *See Virginia Panel Corp.,* 133 F.3d at 867 (noting that jury's finding of wilfulness does not preclude district court from considering other factors that may bear on the equitable nature of defendant's conduct; and affirming district court's decision not to award attorney's fees and to award only ten percent of the damages award as enhanced damages, even though the jury found wilfulness).